# ASSET PURCHASE AGREEMENT

by and among

GOODY'S, LLC

and

NEW GOODY'S MS, LP, as Seller

and

DHIP HOLDINGS, LLC

Dated as of June 22, 2009

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of June 22, 2009 (the "Effective Date"), is made by and between Goody's, LLC, a Delaware limited liability company ("Goody's"), and New Goody's MS, LP, a Tennessee limited partnership ("Record Owner" and, together with Goody's, collectively, the "Seller"), and DHIP HOLDINGS, LLC., a Virginia limited liability company ("Buyer"). Capitalized terms used in this Agreement are defined or cross-referenced in Article 9.

### *BACKGROUND INFORMATION*

A. Goody's is a specialty department store chain based in Knoxville, Tennessee. As of the Petition Date (as defined below), Goody's operated 282 stores in 20 states. Through these stores, Goody's sold an extensive collection of national brands and private label clothes, shoes, accessories, and gift items. Record Owner is an indirect subsidiary of Goody's and is also a debtor-in-possession.

B. Seller commenced voluntary cases for reorganization (the "Bankruptcy Cases") under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on January 13, 2009 (the "Petition Date").

C. Buyer desires to purchase the Acquired Assets (as defined below) and assume the Assumed Liabilities (as defined below) from Seller, and Seller desires to sell, convey, assign and transfer to Buyer, the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§ 105, 363, and 365 and other applicable provisions of the Bankruptcy Code.

D. The Acquired Assets and Assumed Liabilities are assets and liabilities of Seller, which are to be purchased and assumed by Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363, and 365 of the Bankruptcy Code (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code.

E. The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject, among other things, to the entry of the Sale Order.

### *STATEMENT OF AGREEMENT*

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

## ARTICLE 1. PURCHASE AND SALE OF THE ACQUIRED ASSETS.

Section 1.1. <u>Transfer of Acquired Assets</u>. At the Closing, and upon the terms and conditions herein set forth, Seller shall sell, assign, transfer and convey to Buyer or its designees, and Buyer or its designees shall acquire, purchase and accept from Seller all of Seller's right, title and interest in, to and under the following property (collectively, the "<u>Acquired Assets</u>"):

(a) all of Seller's worldwide rights, title and interest in and to all of the intellectual property of Sellers in connection with the "Duck Head" private label brand, including without limitation all trademarks, trade names, certification marks, service marks, logos, trade dress, copyrights, know-how, and other source indicators used in connection with the Duck Head private label brand, including without limitation all such property listed on <u>Schedule 1.1(a)</u>, and all applications, registrations, and renewals in connection therewith, together with the goodwill of any business symbolized thereby and associated therewith (collectively, the "<u>Trademarks</u>"), as well as the right to bring any action at law or in equity for the infringement of such Trademarks occurring prior to the Closing Date, including the right to receive all proceeds and damages therefrom;

(b) all of Seller's worldwide rights, title and interest in and to the domain names, and corresponding registrations, listed on <u>Schedule 1.1(b)</u> (the "<u>Domain Names</u>"), including the right to receive all proceeds and damages therefrom;

(c) subject to Section 5.1(a)(ii), all right title and interest in and to the Old Dominion License Agreement (a copy of which is attached hereto as <u>Exhibit 1.1(c)</u>), including the right to receive all proceeds and royalty fees therefrom; and

(d) copies or originals of all files and records, archived files, artwork, development and design work, clothing patterns, graphics and design work, applications, licenses, agreements, contracts, and permissions (as amended to date) and all other written correspondence and documentation relating to, including, without limitation, all attorney records relating to the Acquired Assets, used in connection with or evidencing ownership of each Acquired Asset to the extent such documents are in Seller's possession.

Section 1.2. <u>Excluded Assets</u>. The Acquired Assets do not include any right, title or interest of any Person other than Seller and the following properties and assets of Seller are hereby expressly excluded (all such assets not being acquired by Buyer being herein referred to as the "<u>Excluded Assets</u>"):

(a) one copy of each of the files and records described in <u>Section 1.1(d)</u>; and

(b) all rights to any royalty payments in connection with the Acquired Assets that accrued prior to the Closing Date.

For the avoidance of doubt, Excluded Assets shall not include, and Buyer shall be entitled to receive as an Acquired Asset, any prepayments of royalties in connection with the Acquired Assets that have been or would be payable with respect to any period on or after the Closing Date.

Section 1.3.  Assumption of Liabilities. At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform and discharge when due, only the following liabilities (the "Assumed Liabilities"):

(a) all liabilities of Seller for Transaction Taxes payable in connection with the transactions contemplated by this Agreement; and

(b) all liabilities and obligations arising on or after the Closing Date, other than successor liability claims, relating to or arising out of the Acquired Assets.

Section 1.4.  Retention of Liabilities. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter. All such other liabilities and obligations shall be retained by and remain liabilities and obligations, including, without limitation, any liabilities associated with the Itochu License Agreement (which is not an Acquired Asset) of Seller (all such liabilities and obligations not being assumed being herein referred to as the "Excluded Liabilities").

## ARTICLE 2.  CONSIDERATION

Section 2.1.  Consideration. The aggregate consideration for the sale and transfer of the Acquired Assets is (i) $2,650,000 in cash (the "Purchase Price"), which price shall be payable and deliverable in accordance with Section 3.3, and (ii) the assumption by Buyer of the Assumed Liabilities.

## ARTICLE 3.  CLOSING AND DELIVERIES

Section 3.1.  Closing. The consummation of the transactions contemplated hereby (the "Closing") shall take place, by no later than June 30, 2009, or otherwise may be agreed to by the parties hereto (the "Closing Date"), at a place agreed upon by the parties.

Section 3.2.  Seller's Deliveries. At the Closing Seller shall deliver to Buyer: bills of sale, endorsements, assignments and other instruments of transfer and conveyance (including the assignment agreements substantially in the form attached hereto as Exhibit 3.2(a)) necessary to effect the sale, transfer, and assignment of the Acquired Assets to Buyer that are consistent with the terms of this Agreement and reasonably satisfactory in form and substance to counsel for Buyer;

(b) possession of the Acquired Assets, including without limitation the Acquired Assets set forth in Section 1.1;

(c) a copy of the Sale Order;

(d) a written designation of the name, title, and notice information for an officer or representative of Seller who has authority to effectuate Seller's obligations under this Agreement (the "Designee") to whom the Buyer should submit any documents or instruments for execution in accordance with Section 5.1(a)(iii); and

3

(e) documentation executed, as necessary, to terminate any liens of General Electric Capital Corporation, GB Merchant Partners, LLC, and PGDYS Lending, LLC on the Acquired Assets as recorded in the office of the Secretary of State of the State of Delaware, the Secretary of State of the State of Tennessee, and the United States Patent and Trademark Office (collectively, the "Lien Releases").

Section 3.3. Buyer's Deliveries. At the Closing:

(a) Buyer shall pay to Seller the Purchase Price, reduced by the deposit in the amount of $397,500 (previously paid to Seller as a $50,000 deposit submitted in connection with Buyer's initial bid for the Acquired Assets and a $347,500 supplemental deposit submitted in connection with Buyer's submission of the highest bid for the Acquired Assets at the auction conducted for the Acquired Assets) and any interest thereon, by wire transfer of immediately available funds in accordance with wire instructions provided by the Seller; and

(b) Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller. Buyer and Seller may agree that Section 1.3 hereof may stand in lieu of a separate instrument.

## ARTICLE 4. REPRESENTATIONS AND WARRANTIES

Section 4.1. Representations and Warranties of Seller. Seller represents and warrants to Buyer as follows:

(a) Organization.

(i) Goody's is a limited liability company duly formed and validly existing under the laws of the jurisdiction of its organization. Subject to any necessary authorization or approval from the Bankruptcy Court, Goody's has all requisite limited liability company power and authority to own its properties and assets and to consummate the transactions contemplated hereby.

(ii) Record Owner is a limited partnership duly formed and validly existing under the laws of the jurisdiction of its organization. Subject to any necessary authorization or approval from the Bankruptcy Court, Record Owner has all requisite partnership power and authority to own its properties and assets and to consummate the transactions contemplated hereby.

(b) Authorization and Validity. Each of Record Owner and Goody's has all requisite limited liability company or limited partnership, as applicable, power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its respective obligations hereunder and thereunder. The execution and delivery of this Agreement and its performance of its obligations hereunder have been duly authorized by all necessary limited liability company action by the managers or members, as applicable, of Goody's and all necessary partnership action by the general and limited partners, as applicable of Record Owner, and no other limited liability company action or partnership action on the part of Seller is necessary to authorize such execution, delivery and performance. This Agreement has

4

been duly executed by each of Record Owner and Goody's and, subject to the Bankruptcy Court's entry of the Sale Order, constitutes each of Record Owner's and Goody's valid and binding obligations, enforceable against each of Record Owner and Goody's in accordance with the terms hereof.

(c) No Conflicts. Subject to the approval by the Bankruptcy Court, Seller's execution and delivery of this Agreement and performance of its obligations hereunder do not and will not require the consent of, or any prior filing with or notice to, any governmental authority or other third party.

(d) Litigation. As of the date of this Agreement, there are no claims, actions (including, without limitation, any opposition, invalidation, cancellation or similar actions in the United States Patent and Trademark Office or any foreign trademark office), suits, proceedings or investigations pending or, to Seller's Knowledge, threatened in writing, before any federal or state court brought by or against Seller with respect to the Acquired Assets or this Agreement.

(e) Infringement by Third Parties. To Seller's Knowledge, none of the Acquired Assets is infringed or has been challenged or threatened in any way.

(f) Continuous Use. Since 2004, Seller has continuously used the Trademarks listed on Schedule 1.1(a) in commerce on or in connection with the goods and services identified by each the registration for the period commencing with the date of first use for such registration through the Closing Date.

(g) Title and Ownership. Seller has good and marketable title to the Acquired Assets and is not aware of any third party that has claimed that the Acquired Assets infringe such third party's rights. Subject to the entry of the Sale Order, at the Closing, Seller will have the right to transfer the Acquired Assets to Buyer free and clear of all Liens, other than Permitted Liens, and Seller has not executed and will not execute any agreement in conflict therewith. To the Knowledge of Seller, (i) there are no Permitted Liens and (ii) the liens to which the Lien Releases relate are the only liens that have been filed against the Acquired Assets while Sellers have owned the Acquired Assets.

(h) Purchase Free and Clear. Subject to entry of the Sale Order by the Bankruptcy Court, the Acquired Assets shall be delivered to Buyer free and clear of all Liens, other than Permitted Liens.

Section 4.2. Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

(a) Corporate Organization. Buyer is a corporation duly formed, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and has all requisite corporate power and authority to own its properties and assets.

(b) Authorization and Validity of Agreement. Buyer has all requisite corporate power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary corporate action by the board

of directors (or equivalent) of Buyer, and no other corporate action on the part of Buyer is necessary to authorize such execution, delivery and performance. This Agreement has been duly executed by Buyer and constitutes the valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms.

(c) No Conflict or Violation. The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d) Consents and Approvals. The execution, delivery and performance of this Agreement by Buyer does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e) Investigation by Buyer. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with Bankruptcy Cases. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in this Agreement (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), except for Seller's representations and warranties contained in this Agreement and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3. Warranties Exclusive. The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE

MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4. Survival of Representations and Warranties. None of the representations or warranties of Seller or Buyer set forth in this Agreement or in any certificate delivered pursuant to Section 7.1(a) or 7.2(a) shall survive the Closing. The parties hereto agree that the representations and warranties contained in this Agreement shall terminate upon the Closing or upon the earlier termination of this Agreement pursuant to Section 8.1 and no Person shall have any liability for any breach thereof from and after such termination.

ARTICLE 5. COVENANTS AND OTHER AGREEMENTS.

Section 5.1. Covenants of Seller and Buyer.

(a) Covenants of Seller.

(i) Old Dominion License. Seller, at the direction of Buyer, will either (i) on the Closing Date assume and assign to Buyer at Closing, all right title and interest in and to the Old Dominion License Agreement, or (ii) reject the Old Dominion License Agreement in which case the Seller shall file a motion within seven (7) business days following the Closing Date for an order rejecting the same.

(ii) Approvals. Seller shall use all commercially reasonable efforts to (A) obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Seller to effect the transactions contemplated by this Agreement, and (B) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(iii) Further Assurances and Limited Power of Attorney. At the request and the sole expense of Buyer, at any time after the Closing Date, Seller or the Designee, on behalf of Seller, shall execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement. Seller further hereby irrevocably designates and appoints the Buyer and its duly authorized officers and representatives as Seller's agent and attorney-in-fact (which appointment is coupled with an interest and shall survive Seller's insolvency, bankruptcy or change of control), to act for and on Seller's behalf after the Closing Date to execute and deliver any such documents and to do all other lawfully permitted acts as the Buyer may deem necessary or desirable to effectuate the purposes of this Agreement.

(b) <u>Covenants of Buyer</u>. Buyer shall use all commercially reasonable efforts to (i) obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement, and (ii) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

Section 5.2. <u>Bankruptcy Matters</u>. To the extent that Seller and Buyer enter into this Agreement prior to the entry of the Sale Order, Seller and Buyer shall use commercially reasonable efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing adequate assurance of future performance by Buyer under the Old Dominion License Agreement if Buyer elects to assume such Agreement.

## ARTICLE 6. <u>TAXES.</u>

Section 6.1. <u>Taxes Related to Purchase of Assets</u>. All federal, state and local sales and transfer taxes, including, without limitation, all state and local taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "<u>Transaction Taxes</u>") that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and are not exempt under § 1146(a) of the Bankruptcy Code, shall be paid by Buyer. Transaction Taxes do not include any tax in the nature of an income tax, including without limitation, any capital gains, franchise, excise, inheritance, estate, succession, or gift taxes. Buyer and Seller agree to cooperate to minimize any such Transaction Taxes and to determine appropriate taxing authorities and amount of Transaction Taxes, if any, payable in connection with the transactions contemplated under this Agreement. Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 6.2. <u>Cooperation on Tax Matters</u>.

(a) Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other filings as required by law relating to tax matters, for the preparation for and proof of facts during any tax audit, for the preparation for any tax protest, for the prosecution or defense of any suit or other proceeding relating to tax matters and for the answer to any governmental or regulatory inquiry relating to tax matters.

(b) Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least six years from the Closing Date, and will give Seller notice and an opportunity to retain any such records in the event that

Buyer determines to destroy or dispose of them after such period. In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any cases under chapter 11 of the Bankruptcy Code of Seller. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 6.3. Allocation of Purchase Price and Purchase Price Allocation Forms. The Purchase Price and the Assumed Liabilities will be allocated among the Acquired Assets in accordance with the allocation of the Purchase Price (the "Allocation") set forth on Schedule 6.3 to be delivered by Buyer to Seller no later than one business day prior to the Closing. Seller and Buyer agree that the transaction will be treated as an asset acquisition for tax purposes. Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated hereby.

ARTICLE 7. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES.

Section 7.1. Conditions Precedent to Performance by Seller. The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.1(c)) may be waived by Seller in its sole discretion:

(a) Representations and Warranties of Buyer. All representations and warranties made by Buyer in Section 4.2 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated the Closing Date and signed by the president of Buyer to that effect.

(b) Performance of the Obligations of Buyer. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date (except with respect to the obligation to pay the Purchase Price in accordance with the terms of this Agreement, which obligation shall be performed in all respects as required under this Agreement), and Seller shall have received a certificate dated the Closing Date and signed by the president of Buyer to that effect.

(c) Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)     No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 7.2.     Conditions Precedent to the Performance by Buyer.  The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.2(d)) may be waived by Buyer in its sole discretion:

(a)     Representations and Warranties of Seller.  All representations and warranties made by Seller in Section 4.1 shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect, and Buyer shall have received a certificate, dated the Closing Date and signed by the Chief Financial Officer of Seller, to that effect.

(b)     Performance of the Obligations of Seller.  Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date, and Buyer shall have received a certificate dated the Closing Date and signed by a duly authorized officer of Goody's and the general partner of Record Owner to that effect.

(c)     Grace Period Filings.  Seller shall have filed with the United States Patent and Trademark Office within the regulatory grace period the renewal documents for U.S. Reg. No. 2,675,428 and U.S. Reg. No. 2,675,429 for DHX and DHX Sport and provided evidence of the completion of such action to Buyer.

(d)     Lien Releases.  Seller shall have obtained the Lien Releases, executed as necessary, from General Electric Capital Corporation, GB Merchant Partners, LLC, and PGDYS Lending, LLC.

(e)     Consents and Approvals.  The Bankruptcy Court shall have entered the Sale Order, in form and substance satisfactory to Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(f)     No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

ARTICLE 8.    TERMINATION

Section 8.1.     Termination.  This Agreement may be terminated at any time prior to the Closing Date:

(a)     by either the Seller or the Buyer if the Closing shall not have occurred by June 30, 2009; provided, however, that such date may be extended by up to ten (10) days by the Seller and the Buyer upon mutual agreement;

(b)    upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets to a third Person, other than an affiliate of Buyer designated by it; provided, however, that Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder at the auction for the Acquired Assets and Buyer is required to remain bound by the terms of this Agreement pursuant to Section 9.5 of this Agreement;

(c)    by the Seller if the Buyer shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within five (5) Business Days after the giving of written notice by the Seller to the Buyer specifying such breach;

(d)    by the Buyer if the Seller shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within five (5) Business Days after the giving of written notice by the Buyer to the Seller specifying such breach; or

(e)    by the mutual written consent of the Seller and the Buyer.

Section 8.2.    **Effect of Termination.**    In the event of termination of this Agreement as provided in Section 8.1, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to Section 8.1(c) and Seller is not then in breach of Seller's obligations hereunder, Seller shall be entitled to retain the Deposit and all interest thereon to Seller as liquidated damages. In the event of termination of this Agreement for any reason other than pursuant to Section 8.1(c) and Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit and all interest thereon.

## ARTICLE 9.    BANKRUPTCY COURT MATTERS

Section 9.1.    **Submission to Bankruptcy Court.**    Seller shall file with the Bankruptcy Court this Agreement and such notices as may be appropriate in connection therewith. Buyer shall cooperate with Seller in obtaining Bankruptcy Court approval the Sale Order.

Section 9.2.    **Buyer's Back-Up Commitment.**    If a Competing Transaction is approved by the Bankruptcy Court with a Qualified Bidder other than the Buyer and at the auction for the Acquired Assets, Buyer has submitted the second highest bid for the Acquired Assets, then the Buyer shall remain bound to this Agreement, on its existing terms and at the purchase price bid by Buyer at the auction, unless and until the Competing Transaction is consummated or, if earlier, until the applicable date set forth in Section 8.1(a).

Section 9.3.    **Party in Interest.**    Buyer and Seller stipulate that Buyer shall be deemed to be a party in interest for all purposes contemplated by the Bankruptcy Court and the Federal Rules of Bankruptcy Procedure in connection with the sale of the Acquired Assets and this Agreement. Provided Buyer files a notice of appearance with the Bankruptcy Court, Seller

11

DB02:8310226.3                                                                                                                                                    068022.1001

shall serve upon Buyer all notices given, or required to be given, and all papers served, or required to be served, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

Section 9.4. Sale Order. Seller shall obtain the entry by the Bankruptcy Court of the Sale Order in form and substance reasonably satisfactory to Buyer and its counsel and Seller and its counsel which shall, among other things, (a) determine that (i) this Agreement was entered into by Buyer and Seller in good faith and represents the highest and best offer for the Acquired Assets and should be approved, and (ii) Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(n) of the Bankruptcy Code have not been violated; (b) authorize and direct Seller to sell the Acquired Assets to Buyer pursuant to this Agreement and Sections 363 of the Bankruptcy Code, free and clear of all Liens (including any and all "interests" in the Purchased Assets within the meaning of Section 363(f) of the Bankruptcy Code), except for the Permitted Liens; (c) authorize and direct Seller to execute, deliver, perform under, consummate and implement, the documents necessary to carry out the transactions contemplated hereby, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing; (d) provide that Buyer will not assume or be liable for any liabilities of Seller, other than the Assumed Liabilities; and (e) contain such other provisions as may be necessary or reasonably desirable or appropriate to give effect to the documents necessary to carry out the transactions contemplated hereby. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of a Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Purchaser is a "good faith" purchaser under section 363(m) or any other section of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of section 363(n) or any other section of the Bankruptcy Code. Any sale order shall provide that it shall be effective and enforceable immediately upon entry by the Bankruptcy Court notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

ARTICLE 10. MISCELLANEOUS.

Section 10.1. Successors and Assigns. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 10.2. Governing Law; Jurisdiction. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Delaware (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this

12

Agreement, and consent to the jurisdiction of, any state or federal court located in the state of Delaware.

Section 10.3. Expenses. Except as otherwise provided herein with respect to the Expense Reimbursement, each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated. Buyer shall pay the cost of all fees, costs, and expenses associated with recording any assignment of the Acquired Assets.

Section 10.4. Broker's and Finder's Fees. Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than Streambank, LLC, whose fees and expenses shall, as between the parties hereto, be the responsibility of Seller, and, insofar as such party knows, no other broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 10.5. Severability. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 10.6. Notices.

(a) All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below, and telephonic confirmation of receipt is obtained promptly after completion of transmission; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

>Goody's, LLC
>400 Goody's Lane
>Knoxville, TN 37922
>Attention: David G. Peek
>Facsimile: (865)694-5983

Additional copy (that will not constitute notice) to:

>Streambank, LLC

        400 Hillside Ave., Suite 19
        Needham Heights, MA 02494
        Attention: Gabe Fried
        Facsimile: (781) 651-4272

Additional copy (that will not constitute notice) to:

        Young Conaway Stargatt & Taylor, LLP
        The Brandywine Building
        1000 West Street, 17th Floor
        Wilmington, DE 19801
        Attention: M. Blake Cleary, Esq.
        Facsimile: (302) 576-3287

If to Buyer:

        DHIP Holdings, LLC
        6000 River Road, Suite B
        Richmond, VA 23226
        Attention: Ross A. Sternheimer
        Facsimile:

Additional copy (that will not constitute notice) to:

        Hirschler Fleischer, a Professional Corporation
        The Edgeworth Building
        2100 East Cary Street
        Richmond, VA 23223-7078
        Attention: Thomas J. Dillon, III, Esq.
        Facsimile: (804) 644-0957

Additional copy (that will not constitute notice) to:

        McCarter and English, LLP
        405 North King Street, 8th Floor
        Wilmington, DE 19899
        Attention: William F. Taylor, Jr., Esq.
        Facsimile: (302) 984-6339

        (b)    Any party may change its address for the purpose of this Section 10.6 by giving the other party written notice of its new address in the manner set forth above.

        Section 10.7. <u>Amendments; Waivers</u>. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any

one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 10.8. Public Announcements. Except in connection with (i) any motions or other pleadings with the Bankruptcy Court as may be necessary in order to seek the entry of the Amended Procedures Order or the Sale Order, or (ii) the solicitation of bids for the Acquired Assets pursuant to the Amended Procedures Order, prior to the entry of the Sale Order, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without the prior written approval of the other parties, unless a press release or public announcement is required by law or order of the Bankruptcy Court. If any such announcement or other disclosure is required by law or order of the Bankruptcy Court, the disclosing party agrees to give the nondisclosing party or parties prior notice of, and an opportunity to comment on, the proposed disclosure. The parties acknowledge that Seller shall file this Agreement with the Bankruptcy Court in connection with obtaining the Amended Procedures Order and the Sale Order. This provisions of this Section 10.8 shall terminate upon entry of the Sale Order.

Section 10.9. Entire Agreement. This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 10.10. Parties in Interest. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10.11. Headings, Interpretation, Gender. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly

construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 10.12. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

Section 10.13. <u>Further Action</u>. Pending the Closing, the parties hereto shall use all reasonable efforts to take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law as may be consistent with the terms of this Agreement, or required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Acquired Assets.

ARTICLE 11. <u>DEFINITIONS</u>.

Section 11.1. <u>Certain Terms Defined</u>. As used in this Agreement, the following terms which are not otherwise defined above, shall have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Wilmington, Delaware are authorized by law or other governmental action to close.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended.

"<u>Competing Transaction</u>" means a transaction (or series of transactions) involving the direct or indirect sale, transfer or other disposition of the Acquired Assets as a single, integrated transaction to a purchaser or group of purchasers jointly bidding, other than Buyer.

"<u>IRS</u>" means the Internal Revenue Service.

"<u>Itochu License Agreement</u>" means that certain Trademark License Agreement dated January 1, 2001 (as amended) by and between Duck Head Apparel Company and Itochu Corporation.

"<u>Lien</u>" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement, other than (a) a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement on or affecting a lessor's interest in, property underlying any leases; (b) any imperfection of title with respect to any asset that does not materially interfere with the present occupancy, use or marketability of such asset and the continuation of the present occupancy or use of such asset; and (c) such covenants, conditions, restrictions, easements, encroachments or encumbrances that are not created pursuant to mortgages or other financing or security documents, or any other state of facts, that do not materially interfere with the present occupancy or use of an asset.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets that results in a material adverse effect on the value of the Acquired Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) any action of any or all of the Seller pursuant to any order of the Bankruptcy Court entered prior to the date hereof, including, without limitation, orders entered in connection with the sale of the Seller's other assets or the liquidation of Seller's inventory, the implementation of this Agreement, the transactions contemplated by this Agreement, any ancillary agreements or the announcement thereof; (B) changes or conditions affecting the retail industry generally; (C) changes in economic, regulatory or political conditions generally; (D) changes resulting from, or from any motion, application, pleading or order filed related to, the Bankruptcy Cases; or (E) any act(s) of war or of terrorism.

"Old Dominion License Agreement" means that certain Sub-License Agreement dated May 29, 2003 (as may be amended to date) by and between TSIL, Inc., as licensor, and Old Dominion Footwear Inc., as licensee.

"Permitted Liens" means liens (i) for current taxes not yet due and payable; or (ii) arising out of or with respect to any Assumed Liabilities.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Qualified Bid" means a "Qualified Bid" as defined in the Bidding Procedures Order.

"Qualified Bidder" means a "Qualified Bidder" as defined in the Bidding Procedures Order. The Buyer shall be deemed a Qualified Bidder.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Sale Hearing" means the hearing held before the Bankruptcy Court at which the sale of the Acquired Assets is approved by entry of a sale order.

"Sale Motion" means the Motion Of The Debtors For Order (A) Setting (1) Date To Conduct Auction Of Debtors' Interests In Certain Real Property Leases And Intellectual Property, And (2) Hearing Date For Approval Of Auction; (B) Approving Bidding Procedures And Terms Of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtors To Enter Into Lease Termination Agreements; (E) Approving Abandonment Of Personal Property; (F) Approving And Authorizing Sale Of Leases And Intellectual Property To Highest Or Best Bidder Free And Clear Of All Liens, Interests, Claims And Encumbrances Pursuant To § 363 Of The Bankruptcy Code; (G) Waiving The Requirements Of Federal Rules Of Bankruptcy Procedure 6004; And (H) Granting Related Relief filed by the Seller with the Bankruptcy Court on February 5, 2009.

"Sale Order" means an order entered by the Bankruptcy Court in form and substance reasonably acceptable to Buyer and Buyer's counsel that approves the sale of the Acquired Assets to Buyer free and clear of any Liens or claims pursuant to the terms of this Agreement.

"Seller's Knowledge" or any other similar term or knowledge qualification means the actual conscious knowledge of any of the Persons listed on Exhibit A hereto as of the date hereof, after reasonable inquiry.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any taxes (including estimated taxes).

*[Signatures are on the following page.]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

DHIP HOLDINGS, LLC, as the Buyer

By: _____
Name: Ross Sternheim
Title: Manager

GOODY'S, LLC, as Seller

By: _____
Name:
Title:

NEW GOODY'S MS, LP, as Seller

By: _____
Name:
Title: