## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GOODY'S FAMILY CLOTHING, | ) | Chapter 11 |
| INC., <u>et al.,</u> | ) | Case No. 08-11133 (CSS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| In re: | ) | |
| | ) | Chapter 11 |
| GOODY'S LLC, <u>et al.,</u> | ) | Case No. 09-10124(CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## OPINION[1]

| | |
|---|---|
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | ELLIOTT GREENLEAF |
| | Shelley A. Kinsella (Argued) |
| M. Blake Cleary (Argued) | Neil R. Lapinski |
| Margaret B. Whiteman | 1105 North Market Street |
| Jaime N. Luton | Suite 1700 |
| The Brandywine Building | Wilmington, DE 19801 |
| 1000 West Street, 17th Floor | - and - |
| Wilmington, DE 19899-0391 | Sblend A. Sblendorio (Argued) |
| | Hoge, Fenton, Jones & Appel, Inc. |
| | 6155 Stoneridge Drive, Suite 200 |
| Counsel for Debtors | Pleasanton, CA 94588 |
| and Debtors in Possession | |
| | Counsel for SJW Land Company, Inc. |

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

Thomas M. Horan (Argued)
Mark L. Desgrosseilliers
Ericka F. Johnson
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801

Counsel for Plan Administrators

Dated: December 1, 2010

Sontchi, J. _____

COOLEY GODWARD & KRONISH

Jeffrey Cohen
The Grace Building
1114 Avenue of the Americas
New York, New York  10036-7798

Counsel for Official Committee
of Unsecured Creditors


## INTRODUCTION

Before this Court are two motions filed by SJW Land Company ("SJW") to compel payment of unpaid 2008 and 2009 property taxes as post-petition administrative expenses on three leases (as defined below): the HQ Lease, the DC Lease, and the Vacant Lease.   For the reasons set forth below, the Court finds: (1) Goody's Family Clothing, Inc. ("Debtor I") is not liable for the 2008 property taxes on any of the leases; (2) SJW has a valid general unsecured claim in the amount of $220,915.73 against Goody's LLC ("Debtor II") for the 2008 property taxes on the DC and Vacant Leases; and (3) SJW has a valid administrative expense claim in the amount of $78,118.80 against Debtor II for the 2009 property taxes on the HQ and DC Leases.

2

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## STATEMENT OF FACTS[2]

### I.    Factual Background

On February 2, 2006, Goody's Family Clothing, Inc. ("Debtor I") entered into three leases with SJW's predecessor for (i) Debtor I's corporate headquarters (the "HQ Lease"), (ii) a distribution center ("DC Lease"), and (iii) a vacant lot ("Vacant Lease") - - all located in Knoxville, Tennessee (collectively, the "Leases").[3]  The Leases all provide that the tenant is responsible for all property taxes on the leased premises.[4]  The Leases further provide that the tenant is required to pay the property taxes "when due," directly to the relevant taxing authority.[5]

On June 9, 2008, Debtor I filed petitions in this Court for relief under Chapter 11 of the United States Bankruptcy Code.  The deadline for filing proofs of claim in the

---

[2] Because the sequence of events in this case is significant, but also quite complicated, a timeline of events is provided in Appendix I.

[3] Motion of SJW Land Company, Inc. Pursuant to 11 U.S.C. § 503(b), to Compel Allowance and Payment of the Post-Petition Rental Obligations as Administrative Expenses, Exs. 1–6 [D.I. 1315] (hereinafter "Mot. to Compel"). Unless otherwise indicated, all docket entries cited in this memo refer to the Debtor I docket, Case No. 08-11133.

[4] *Id.* at Ex. 1 [D.I. 1315].  All three leases in this case contain identical language regarding property taxes.  *See e.g.*, Motion of SJW Land Company, Inc. Pursuant to 11 U.S.C. §§ 105(a), 365 and 503(b) to Compel Payment of Post-Petition Rental Obligations, Ex. A, Case No. 09-10124 [D.I. 654].

[5] *Id.*

Debtor I case was September 15, 2008.[6]  On August 25, 2008, SJW filed a proof of claim

in the amount of $298,670.00, representing unpaid "stub rent" for the month of June

2008.[7]  Stub rent is the portion of rent that was due pre-petition but covers the post-

petition period.  For example, Debtor I failed to pay the monthly rent due under the

Leases on June 1 and filed bankruptcy on June 8.  The stub rent is the rent for June 8

through and including June 30.

On August 26, 2008, Debtor I filed the First Amended Joint Plan of

Reorganization (as amended, the "Debtor I Plan").[8]  Under the Debtor I Plan, all of

SJW's Leases were to be assumed and assigned on the Plan's Effective Date (as defined

below).[9]  Further, section 6.3 of the Debtor I Plan provided that "[a]ny monetary

amounts by which each executory contract and unexpired lease to be assumed pursuant

to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy

Code, by Cure."[10]  The Goody's I Plan also provided that if there was a dispute over the

amount of Cure, then "[c]ure shall occur following the entry of a Final Order by the

Bankruptcy Court resolving the dispute."[11]

---

[6] Order (I) Setting General Bar Date and Procedures for Filing Proofs of Claim, and (II) Approving Form and Manner of Notice Thereof [D.I. 508].

[7] Objection of Plan Administrator to Motion of SJW Land Company, Inc. Pursuant to 11 U.S.C. § 503(b), to Compel Allowance and Payment of the Post-Petition Rental Obligations as Administrative Expenses, Ex. A [D.I. 1328] (hereinafter "Objection of Debtor I").

[8] First Amended Disclosure Statement with respect to the First Amended Joint Plan of Reorganization Proposed by Goody's Family Clothing, Inc., Its Subsidiary Debtors, and the Official Committee of Unsecured Creditors, Ex. A [D.I. 589].

[9] *Id.* at §§ 6.1, 6.2.

[10] *Id.* at § 6.3.

[11] *Id.*

On October 2, 2008, SJW received the tax bills for the 2008 property taxes (the "2008 Taxes") in the mail.[12]  Janelle McCombs, the property manager for SJW, sent an email that day to Will Kegley, then the Chief Accounting Officer and Treasurer of Debtor I, informing him that SJW had received the 2008 property tax bills for the Leases, which Ms. McCombs attached to the email.[13]  Ms. McCombs requested in the email that Mr. Kegley "as usual, . . . provide proof of payment when the payments have been made."[14]

Also on October 2, 2008, Debtor I filed a Motion to Approve Order Fixing Cure Amounts for the Debtors' Executory Contracts and Unexpired Leases Assumed Pursuant to the Debtor I Plan (the "Cure Motion").[15]  The Cure Motion proposed fixing the cure amount owed to SJW at $298,670.00 (the "Cure Amount") — the full amount of stub rent sought by SJW in its proof of claim.[16]  The Cure Motion also included a Cure Notice, which stated:

> IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING, INCLUDING SETTING THE CURE AMOUNTS SOUGHT BY THE MOTION.[17]

---

[12] Reply of SJW Land Company, Inc. to Objections to Its Motions to Compel Payment of Post-Petition Rental Obligations, Ex. F [D.I. 1400] (hereinafter "Reply of SJW").

[13] *Id.*

[14] *Id.*

[15] Case No. 08-11133 [D.I. 813].

[16] Cure Mot., Proposed Order Ex. A [D.I. 813].

[17] Cure Mot., Cure Notice at 3 [D.I. 813].

The Cure Motion set October 13, 2008 as the deadline for filing objections to the Cure Motion, and scheduled a hearing to consider any objections for October 20, 2008 (the "Effective Date").[18]   A copy of the Cure Motion was properly served on SJW.[19]

On October 3, 2008, Debtor I and SJW executed an amendment to the HQ Lease (the "HQ Lease Amendment").[20]   The "Commencement Date" of the HQ Lease Amendment was the Effective Date of the Debtor I Plan.[21]   Under the HQ Lease Amendment, Debtor I agreed to deposit $104,667.00 with SJW as a security deposit (the "Security Deposit") within two days after the Effective Date.[22] The Security Deposit was security for "the performance by Tenant of all of Tenant's obligations, covenants, conditions and agreements under this Lease."[23]

On October 7, 2008, the Court entered an order confirming the Debtor I Plan (the "Confirmation Order").[24]   In the Confirmation Order, the Court found that Debtor I had "provided adequate assurance of future performance with respect to the executory contracts and unexpired leases to be assumed and/or assigned pursuant to Article VI of the Plan."[25]

---

[18] *Id.* at 2 [D.I. 813].

[19] Affidavit/Declaration of Service regarding Motion to Approve Order Fixing Cure Amounts for the Debtors' Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan, Ex. B at 35 [D.I. 859].

[20] Reply of SJW, Ex. D [D.I. 1400].

[21] *Id.* at § 1.

[22] *Id.* at § 2.2.

[23] *Id.*

[24] Order and Findings of Fact, Conclusions of Law, Confirming the Second Amended Joint Plan of Reorganization Proposed by Goody's Family Clothing, Inc., its Subsidiary Debtors and the Official Committee of Unsecured Creditors [D.I. 849] (hereinafter "Confirmation Order").

[25] *Id.* at 15.

SJW did not object to the Cure Motion, or the proposed Cure Amount, by the October 13, 2008 deadline.  On October 20, 2008, after the hearing on objections to the Cure Motion, the Court entered an Order Fixing Cure Amounts for the Debtors' Executory Contracts and Unexpired Leases Assumed Pursuant to the Debtor I Plan (the "Cure Order").[26]  The Cure Order fixed the Cure Amount owed to SJW at $298,670.00.[27] Immediately following entry of the Cure Order, the Debtor I Plan became effective,[28] and all three Leases (HQ, DC, and Vacant) were assumed and assigned to Debtor II.[29] The bar date for filing administrative expense claims in the Debtor I case was December 4, 2008.[30]  SJW did not file an administrative expense claim by the bar date.

Debtor II terminated the Vacant Lease on December 31, 2008, but continued to use and occupy the HQ and DC Lease premises.[31]   On January 13, 2009, however, Debtor II filed petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.[32]   On March 1, 2009, Debtor II and SJW executed the Second HQ Lease Amendment, which provided for a significantly shorter term (ending on July 31, 2009), a rent reduction, and a reduction in the rentable square footage.[33]  In the motion to

---

[26] [D.I. 943].

[27] *Id.* at 2.

[28] Debtor I Plan § 9.2 [D.I. 847]

[29] *See id.* at §§ 5.1, 6.1, and 6.2 [D.I. 847].

[30] Notice of (1) Effective Date (2) Bar Dates For Filing Administrative Claims, Professional Fee Claims And Contract/Lease Rejection Damages Claims and (3) Entry Of Order Confirming Second Amended Joint Plan Of Reorganization [D.I. 951].

[31] Reply of SJW [D.I. 1400].

[32] Chapter 11 Voluntary Petition, Case No. 09-10124 [D.I. 1].

[33] Motion to Authorize (I) Debtors Entry into an Amendment to a Lease of Nonresidential Real Property for the Debtors Corporate Headquarters Located in Knoxville, Tennessee Pursuant to § 363(b) of the Bankruptcy Code and

assume the HQ Lease, as amended, Debtor II conceded that it was "responsible for the payment of the 2008 real estate taxes in the amount of $171,093.03," and agreed to pay the 2008 real estate taxes for the HQ Lease (the "2008 HQ Taxes") as cure.[34]  The Court approved Debtor II's assumption of the HQ Lease, as amended, on March 31, 2009. That same day, Debtor II rejected the DC Lease.[35]

## II.    Procedural Background

On March 25, 2009, SJW filed a motion in the Debtor I case to compel payment of the 2008 property taxes for all three Leases as post-petition administrative expenses, and to allow it to apply the Security Deposit.[36]  Debtor I objected to SJW's motion on April 13, 2009, arguing that the Confirmation Order, the Cure Order, and section 365 of the Bankrtupcy Code all bar SJW from seeking late payment for the 2008 Taxes.[37]  On May 15, 2009, SJW filed a motion in the Debtor II case to compel payment of the 2008 property taxes for the DC and Vacant Leases (the "2008 Taxes"), the property taxes for the HQ Lease for January and February 2009, and the property taxes for the DC Lease for January through March 2009 (collectively, the "2009 Taxes").[38]  Debtor II objected to SJW's motion on June 19, 2009, arguing that neither the 2008 Taxes nor the 2009 Taxes

---

(II) Debtors Assumption of the Lease as Amended Pursuant to § 365(a) of the Bankruptcy Code; (B) Granting a Waiver of Bankruptcy Rule 6004(h); and (C) Granting Related Relief, at 10, Case No. 09-10124 [D.I. 476].

[34] *Id.*

[35] Debtors' Objection to Motion of SJW Land Company, Inc. Pursuant to 11 U.S.C. §§ 105(a), 365 and 503(b) to Compel Payment of Post-Petition Rental Obligations, at ¶ 7, Case No. 09-10124 [D.I. 723] (hereinafter "Objection of Debtor II").

[36] Mot. to Compel [D.I. 1315].

[37] Objection of Debtor I [D.I. 1328].

[38] Mot. to Compel, Case No. 09-10124 [D.I. 654].

were entitled to administrative expense status.[39]  Debtor II did not, however, contest its liability for the 2008 or 2009 Taxes.[40]

SJW filed a joint reply to the objections on June 28, 2009, arguing that "[w]hat is undeniable is the debtor entities occupied the premises throughout 2008 and into 2009 without paying all of the rent."[41]  SJW further suggested that it was not barred from seeking recovery of the 2008 Taxes from Debtor I, because it "could conceivably file a motion to allow a late filed claim" on an "excusable neglect" theory.[42]  A hearing was held on SJW's motions on July 1, 2009.  At the hearing, Debtor I asserted that the issue of "excusable neglect" was not properly before the Court, because SJW had not raised the issue "on motion," as required by Bankruptcy Rule 9006(b).  In response, the Court allowed Debtor I to file a sur-reply addressing SJW's excusable neglect argument, which Debtor I did on July 6, 2009.[43]

SJW's specific claims against Debtor I and Debtor II are set forth below:

| SJW's Claims Against Debtor I | | |
| --- | --- | --- |
| Lease | Tax Period | Amount Claimed Due |
| DC | 2008 (Full) | $213,565.95 |
| Vacant | 2008 (Full) | $7,349.78 |
| Total | | $220,915.73 |

---

[39] Objection of Debtor II, Case No. 09-10124 [D.I. 723].

[40] *Id.*

[41] Reply of SJW at 1 [D.I. 1400].

[42] *Id.* at 16.

[43] Sur-Reply of Plan Administrator in Respect of Motion of SJW Land Company, Inc. Pursuant to 11 U.S.C. § 503(b), to Compel Allowance and Payment of the Post-Petition Rental Obligations as Administrative Expenses [D.I. 1407].

| SJW's Claims Against Debtor II | | |
|---|---|---|
| **Lease** | **Tax Period(s)** | **Amount Claimed Due** |
| Vacant | 2008 (Full) | $7,349.78 |
| DC | 2008 (Full) | $213,565.95 |
| | January – March 2009 | $50,411.50 |
| HQ | January – February 2009 | $27,707.30 |
| **Total** | | **$299,034.53** |

## LEGAL DISCUSSION

Because SJW is seeking payment of the 2008 Taxes from either Debtor I or Debtor II, but is only seeking payment of the 2009 Taxes from Debtor II, it is useful to separate the analysis by debtor.

### I.    Debtor I

SJW is seeking $220,915.73 from Debtor I for the 2008 Taxes, plus attorneys' fees.[44]  Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.[45]

Section 365(b)(1)(A) provides that ''[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee . . . cures, or provides adequate assurance that

---

[44] Reply of SJW at 12 [D.I. 1400].

[45] 11 U.S.C. § 365(d)(3).

the trustee will promptly cure, such default . . .''[46]  Thus, the threshold issue is when the obligation to pay the 2008 Taxes arose under the Leases.

As this Court stated in *In re Goody's Family Clothing, Inc.*, "[i]t is well settled in this Circuit that, in the context of section 365(d)(3), the plain meaning of 'obligations' is 'something that one is legally required to perform under the terms of the lease.' Moreover, an obligation only arises when a party becomes legally obligated to perform it."[47]  As stated above, each of the Leases provides that the tenant is required to pay the property taxes "when due," directly to the relevant taxing authority.[48]  Therefore, the obligation to pay the 2008 Taxes arose when the 2008 Taxes came "due" under Tennessee law.

### A.   When the 2008 Taxes Came "Due"

Tennessee law is somewhat ambiguous on the issue of when property taxes are due, but the weight of authority strongly suggests that property taxes are due on the first Monday in October.  The ambiguity arises from the Tennessee Code's inconsistent use of the words "due" and "payable."  Tenn. Code Ann. § 67-1-701(a) provides:

> (a) All taxes, state, county, and municipal, to be collected under this part, parts 10, 15 and 16 of this chapter, and chapter 5, parts 18–20 of this title shall be payable the first Monday in October in each year, except taxes of municipal corporations that, under existing laws, are authorized to collect their own taxes on property and privileges; provided, that, whenever,

---

[46] *Id.* at § 365(b)(1)(A).

[47] *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 609 (Bankr. D. Del. 2008) (quoting *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001)); *see also In re Sportsman's Warehouse*, 436 B.R. 308, 316 (Bankr. D. Del. 2009) ("Under well-settled law, whether the real estate taxes for the pre-petition period are payable as an administrative expense under section 365(d)(3) rises or falls on when the debtor's obligation to pay those taxes.").

[48] Mot. to Compel, Ex. 1 at 4 [D.I. 1315]; *see also* Mot. to Compel, Ex. A at 4, Case No. 09-10124 [D.I. 654].

under any plan or program of consolidation of governmental functions of county offices with comparable facilities provided under any municipal charter, it is expedient to fix different due dates than those established in this subsection (a), in order to avoid the destruction of existing municipal fiscal policies, the county trustee of any county, by and with the consent of a majority of the members of the county legislative body of the county, may establish due dates other than those set forth in this subsection (a).

Because § 67-1-701(a) states that property taxes "shall be payable the first Monday in October" rather than "shall be *due* the first Monday in October," SJW contends that the true due date must be after the first Monday in October.[49]  To determine the due date, SJW looks to Tenn. Code Ann. § 67-5-2010(a)(1), which states that property taxes become delinquent on March 1st "following the tax due date."  This, SJW reasons, suggests that February 28th is the true due date.[50]  In other words, SJW argues that under Tennessee law, property taxes are payable from October 1st to February 27th, due on February 28th, and then delinquent on March 1st.

There are several reasons why SJW's argument rests on an improper reading of Tennessee law.  First, while Tenn. Code Ann. § 67-1-701(a) does say that property taxes "shall be payable the first Monday in October," it also later refers to "due dates other than those set forth in this subsection (a)."[51]  The only date established — or even mentioned — in subsection (a) is the first Monday in October.  Therefore, the "due date" to which statute is referring *must* be the first Monday in October.  Second, Tenn. Code Ann. § 67-1-702(a), which is titled "Date and place of payment," states that property taxes "shall be *due and payable* on the first Monday in October of each year."

---

[49] *Id.*

[50] *Id.*

[51] Tenn. Code Ann. § 67-1-701(a).

12

Perhaps most importantly, the 2008 Property Tax Notices sent to SJW by the Knox County Trustee each state prominently that "taxes are due and payable on October 1, 2008 and must be paid by February 29, 2009."[52]  Finally, multiple Tennessee Attorney General Opinions state that property taxes are both "due and payable" on the first Monday in October.[53]

In sum, the weight of authority strongly suggests that the 2008 Taxes came due on the October 1, 2008.  In fact, regardless of how one interprets the precise language of Tenn. Code Ann. § 67-1-701(a), it is clear that Tennessee tax collectors, courts, and attorneys general have long interpreted Tennessee law to mean that property taxes are "due" on the first Monday in October.[54]  In light of the foregoing, the Court finds that the obligation to pay the 2008 Taxes arose on October 1, 2008.

## B.  Whether Debtor I Is Still Liable for the 2008 Taxes

The next issue is whether Debtor I is still liable for the 2008 Taxes.  To answer this question, it is useful to track the liability for the 2008 Taxes chronologically.

---

[52] Objection of Debtor II, Ex. A, Case No. 09-10124 [D.I. 723].

[53] *See e.g.*, Tenn. Op. Atty. Gen. No. 04-149, at 1 (2004) ("As a general rule, county, school, and all property taxes are 'due and payable on the first Monday in October of each year.'") (citing both Tenn. Code Ann. §§ 67-1-702(a) and 67-1-701(a)); Tenn. Op. Atty. Gen. No. 92-03, at 2 (1992) ("[B]y the express terms of both Tenn. Code Ann. §§ 67-1-701(a) and 702(a), the date upon which property taxes levied for both general purposes and education purposes become due and payable is the first Monday in October.").

[54] After an exhaustive review, the Court has found no instance in which a Tennessee court, state agency, municipality, or county has ever interpreted Tennessee law to mean that property taxes are merely "payable," and not "due," on the first Monday in October.  Indeed, the interpretation that property taxes are due on the first Monday in October appears to have spanned several decades.  *See e.g.* Tenn. Op. Atty. Gen. No. 04-149, at 1 (2004) ("As a general rule, county, school, and all property taxes are 'due and payable on the first Monday in October of each year.'"); Tenn. Op. Atty. Gen. No. 92-03, at 2 (1992) ("[B]y the express terms of both Tenn. Code Ann. §§ 67-1-701(a) and 702(a), the date upon which property taxes levied for both general purposes and education purposes become due and payable is the first Monday in October."); *Marlowe v. Kingdom Hall of Jehovah's Witnesses*, 541 S.W.2d 121, 124 (Tenn. 1976) (interpreting the former Tennessee code section 67-1-701 to mean that property taxes "are due and payable on the first Monday in October in each year").

Jan. 1, 2008:    In Tennessee, property taxes become a personal debt of the property

owner on January 1 of the year for which the taxes are assessed.[55]

Therefore, on January 1, 2008, the property taxes became a personal debt

of SJW.  However, while SJW became liable to the State of Tennessee of

January 1, 2008, Debtor I was not liable to SJW for the 2008 Taxes until

October 1, 2008.  As discussed above, under the terms of the Leases,

Debtor I's obligation to pay the 2008 Taxes did not arise until October 1,

2008.  Accordingly, from January 1, 2008 to October 1, 2008, SJW was

solely liable for the 2008 Taxes.

Oct. 1, 2008:    The 2008 Taxes became "due" under Tennessee law.[56]  This, as discussed

above, triggered Debtor I's obligation to pay the 2008 Taxes under the

terms of the Leases.[57]   At this point, SJW was liable to the state of

Tennessee for the 2008 Taxes, and Debtor I was liable to SJW for the taxes.

Oct. 7, 2008:    The Court entered the Confirmation Order, which approved the Debtor I

Plan of Reorganization.[58]  The Confirmation Order stated that Debtor I

had "provided adequate assurance of future performance with respect to

the . . . unexpired leases to be assumed and/or assigned" under the

---

[55] Tenn. Code Ann. § 67-5-2101.

[56] *Id.* at § 67-1-701(a).

[57] Mot. to Compel, Ex. 1 at 4 [D.I. 1315].

[58] Confirmation Order [D.I. 849].

14

Debtor I Plan, which included the Leases.[59]  The Debtor I Plan further provided that the Leases would be assumed and assigned upon entry of the Cure Order.[60]

Oct. 8, 2008:  Debtor I's nonpayment of the property taxes meant that it was in default pursuant to section 9.1 of the Leases.[61]

Oct. 20, 2008:  The Court entered the Cure Order, which fixed the cure amount for the Leases at $298,670.00.[62]  As the Second Circuit stated in *In re Wireless Data*, "[t]he resolution of these claims, generally referred to as 'cure claims,' strives to restore the 'debtor-creditor relationship . . . to pre-default conditions,' bringing the contract back into compliance with its terms."[63]  Thus, entry of the Cure Order wiped away Debtor I's default for failure to pay the 2008 Taxes, and brought the Leases back into compliance with their terms.  Therefore, after entry the Cure Order on October 20, 2008,

---

[59] *Id.* at ¶ HH.

[60] *Id.* at ¶ 17.

[61] Section 9.1 of the Leases states that the tenant is in default if it "fails to pay . . . Additional Rent or other sum or charge hereunder within five (5) days after written notice that the same is due."  Mot. to Compel, Ex. 1 at 12 [D.I. 1315].  Under section 5.2 of the Leases, property taxes are considered "Additional Rent."  *Id.* at 4.  On October 2, 2008, Ms. McCombs of SJW sent an email to Debtor I's then-Treasurer informing him that the 2008 Taxes were due, and attaching the tax bills.  Reply of SJW, Ex. F [D.I. 1400].  Therefore, because it had not paid the 2008 Taxes within 5 days after receiving written notice, Debtor I was in default on October 8, 2008.

[62] Cure Order [D.I. 943].

[63] *In re Wireless Data, Inc.*, 547 F.3d 484, 489 (2d Cir. 2008) (quoting *In re Taddeo*, 685 F.2d 24, 26-27 (2d Cir. 1982), and citing 3 Collier on Bankruptcy § 365.05[3], at 365-54 (15th ed. rev. 2008)); *see also In re DBSI, Inc.*, 405 B.R. 698, 704 (Bankr. D. Del. 2009) (Walsh, J.).

Debtor I was no longer liable to SJW for the 2008 Taxes. SJW, however, was still liable to the State of Tennessee for the taxes.

Pursuant to the Confirmation Order, the Leases were assumed and assigned to Debtor II upon entry of the Cure Order.[64] Assumption of an unexpired lease "acts as a renewed acceptance of the terms of the executory bargain."[65] As Judge Walsh stated in *In re Cellnet Data Systems, Inc.*, "[w]hen a bankruptcy court approves the assumption of an [unexpired lease], it necessarily finds that no uncured defaults exist."[66] Accordingly, when Debtor I assumed the Leases on October 20, 2008, it was obligated under the (renewed) Leases to pay property taxes, but only when they came "due" under Tennessee law (i.e., October 1, 2009). SJW was still liable to the State of Tennessee for the 2008 Taxes, and because of the Cure Order, no longer had a claim on Debtor I for payment of the 2008 Taxes.

Pursuant to the Confirmation Order, immediately following assumption, Debtor I was deemed to have assigned the Leases to Debtor II.[67] Section

---

[64] Confirmation Order at ¶ 17 [D.I. 849].

[65] *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311 (3d Cir. 2003).

[66] 313 B.R. 604, 608 (Bkrtcy. D. Del. 2004); *see In Re Lykes Bros. Steamship Co.*, 221 B.R. 881, 883 (Bankr. M.D. Fla. 1997) ("If prior to the assumption of any executory contract there is no allegation of any existing default, the order approving the contract determines that no default exists.").

[67] Debtor I Plan at 30 [D.I. 589].

365(k) of the Code provides that assignment of a lease assumed by the debtor "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."[68]  Moreover, The non-bankruptcy party to the lease has the burden to assert any defaults prior to assignment.  Thus, upon assigning the Leases to Debtor II, Debtor I was relieved of all liability for property taxes under the Leases.  SJW, however, was still liable to the State of Tennessee for the 2008 Taxes.

As the above chronology demonstrates, SJW is ultimately responsible for the 2008 Taxes.  Debtor I was liable for the 2008 Taxes when they came due on October 1, 2008, and was in default for failure to pay the 2008 Taxes on October 8, 2008.  However, the Cure Order wiped away Debtor I's default.  Debtor I then assumed and assigned the Leases to Debtor II, relieving Debtor I of liability for any subsequent defaults under the Leases.

### C.  Excusable Neglect

SJW asserts that its failure to file a timely objection to the Cure Motion constitutes "excusable neglect" under Rule 9006(b)(1).[69]  Bankruptcy Rule 9006(b)(1) provides that "when an act is required ... to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to the be done where the failure was the result of

---

[68] 11 U.S.C. § 365(k).

[69] Reply of SJW at 16 [D.I. 1400].

excusable neglect."[70]    The party seeking relief bears the burden of proving excusable neglect by a preponderance of the evidence.[71]

The seminal case on excusable neglect is *Pioneer Investment Services v. Brunswick Associates*.[72] In *Pioneer*, the Supreme Court examined the "excusable neglect" standard and concluded that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[73]    The Court then listed four factors for courts to consider in determining whether a party is entitled to relief for excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[74]

### i.    Prejudice to the Debtor

As the party seeking to file a late objection to the Cure Motion, SJW bears the burden of proving a lack of prejudice to Debtor I.[75]    However, SJW conducts its prejudice analysis as if it were seeking to file an administrative expense claim, rather than a late objection to the Cure Motion.[76]    The only way for SJW to recover the 2008

---

[70] Fed. R. Bankr. P. 9006(b)(1).

[71] *See e.g., Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 613 (Bankr. D. Del. 2006).

[72] 507 U.S. 380 (1993).

[73] *Id.* at 395.

[74] *Id.*

[75] *In re KMart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006).

[76] Reply of SJW at 17 [D.I. 1400].

Taxes is to seek permission to file a late objection to the Cure Motion, which proposed a Cure Amount that did include the 2008 Taxes.[77]    Merely filing an administrative expense claim for the 2008 Taxes under section 503(b)(1)(A) as an actual, necessary cost and expense of preserving the estate would not have been sufficient to recover the 2008 Taxes.  The administrative claims bar date was December 4, 2008, which was 45 days *after* the Leases had been cured, assumed, and assigned pursuant to the Debtor I Plan.[78] As the court noted in *In re Cellnet*, "[w]hen a bankruptcy court approves the assumption of an [unexpired lease], it necessarily finds that no uncured defaults exist."[79] Consequently, Debtor I is no longer liable for *pre*-confirmation defaults.  As to *post*-confirmation defaults, section 365(k) of the Bankruptcy Code expressly states that "[a]ssignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."[80]  Therefore, had SJW timely filed an administrative expense claim on December 3, 2008, for example, Debtor I could have correctly objected to the claim on the basis that the Leases has already been cured, assumed, and assigned.

---

[77] As stated above, Debtor I proposed fixing the Cure Amount at $298,670.00, which was the full amount of the stub rent sought by SJW in its proof of claim.  To recover the 2008 Taxes, SJW would have needed to file an objection to the Cure Motion requesting that the proposed Cure Amount be increased to $507,264.55 (the 2008 Taxes plus the June 2008 stub rent).  The deadline for filing objections to the Cure Motion was October 13, 2008.

[78] Notice of (1) Effective Date (2) Bar Dates For Filing Administrative Claims, Professional Fee Claims And Contract/Lease Rejection Damages Claims and (3) Entry Of Order Confirming Second Amended Joint Plan Of Reorganization [D.I. 951].  The Leases were cured, assumed, and assigned to Debtor II on October 20, 2008.  *See* Cure Order [D.I. 943].

[79] *In re Cellnet*, 313 B.R. at 608; *see In Re Lykes Bros. Steamship Co.*, 221 B.R. 881, 883 (Bankr. M.D. Fla. 1997) ("If prior to the assumption of any executory contract there is no allegation of any existing default, the order approving the contract determines that no default exists.").

[80] 11 U.S.C. § 365(k).

As a result, there can be little doubt that SJW has not carried its burden of proving a lack of prejudice to Debtor I.

### ii. Length of the Delay

Courts should consider the length of the delay in absolute terms.[81]  Here, again, SJW conducts its analysis as if it were seeking to file an administrative expense claim rather than an objection to the Cure Motion.[82]  SJW argues that the length of the delay was only 3.5 months, as the administrative claims bar date was December 4, 2008, and it filed its Motion to Compel on March 24, 2009.  However, the relevant deadline was the October 13, 2008 deadline for objections to the Cure Motion, not the administrative claims bar date.  Thus, the true length of the delay was roughly 5 months.  Courts have held that comparable delays weigh against the movant.[83]  In addition, the delay takes on added significance when a plan of reorganization was confirmed in the interim.[84]  In this case, the finality of the Cure Order was central to the Debtor I Plan — in fact, the Debtor I Plan became effective only when the Court entered the Cure Order.  Therefore, this factor also weighs against SJW.

---

[81] *In re O'Brien*, 188 F.3d at 130.

[82] Reply of SJW at 17 [D.I. 1400].

[83] *See e.g., In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y .2003); ("length of delay in filing the Proof of Claim here is substantial, that is, it was filed more than six months after Bar Date."); *In re XO Communications*, 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003) (finding that a delay of four months weighed against permitting a late proof of claim).

[84] *See In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995) (highlighting that "the Proof of Claim was filed after the Debtors' Plan was formulated, negotiated and confirmed"); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 1002, 1007 (S.D.N.Y. 1993) (noting the particular disruption that would result from allowance of a late claim "after consummation of a vigorously negotiated claims settlement and Plan of Reorganization . . . on which the creditors, the debtor and the stockholders reached their agreements.").

iii. <u>Reason for the Delay</u>

SJW claims that the reason it did not file an objection to the Cure Motion for the 2008 Taxes was that it "had no reason to believe the taxes would not be paid timely[,] as had been the case for over ten years."[85]  SJW noted that in years past, Debtor I had paid the property taxes at the end of February in the year following the due date.[86]  At the July 1, 2009 hearing, SJW emphasized this line of reasoning, and argued that the "course of performance" between the parties had amended the Leases under Tenn. Code Ann. § 47-1-303.[87]  However, the "course of performance" statute to which SJW cites is part of Tennessee's Uniform Commercial Code, which, of course, only applies to leases of *goods*.[88]  Real property leases are goverened by Tennessee property law, not Tennessee's UCC.[89]

Moreover, it was incumbent upon SJW to object to the Cure Motion.[90]  SJW received the tax bills for the 2008 Taxes *on the very same day* that Debtor I filed the Cure Motion, and the tax bills stated prominently that "[t]he 2008 taxes are due October 1, 2008."  And not only did SJW's property manager receive the tax bills, she even *forwarded* them to Debtor I.[91]  SJW knew that the Leases were scheduled to be assumed

---

[85] Reply of SJW at 17 [D.I. 1400].

[86] *Id.* at 6.

[87] Transcript of Omnibus Hearing on July 1, 2009 at 8 [D.I. 1414] (hereinafter "Hearing Transcript").

[88] *See generally* Tenn. Code Ann. § 47-2A-102 (stating that "[t]his chapter applies to any transaction, regardless of form, that creates a lease."); Tenn. Code Ann. § 47-2A-103(j) (defining "Lease" as "a transfer of the right to possession and use of *goods* for a term in return for consideration") (emphasis added).

[89] *See generally* Tenn. Code Ann. § 66-28-101 *et seq.* (2006).

[90] *See In re Diamond Mfg. Co.*, 164 B.R. 189, 199 (Bankr. S.D. Ga. 1994) ("The nonbankrupt party bears [the] burden to assert any defaults prior to assumption."); *accord In re Cellnet*, 313 B.R. at 608.

[91] Reply of SJW, Ex. F [D.I. 1400].

and assigned as part of the Debtor I Plan.[92]    SJW received the Cure Notice, which

prominently stated that,

> If you fail to respond in accordance with this notice, the court may grant
> the relief demanded by the motion without further notice or hearing,
> including setting the cure amounts sought by the motion.[93]

SJW therefore should have realized that it needed to object to the Cure Amount to

ensure that it included the 2008 Taxes.  SJW simply failed to correctly calculate its own

Cure Amount.  As Judge Shannon stated in *In re Pac-West Telecomm*, "[t]he fact that both

the Landlord and [the debtor] were mistaken as to the extent of [the debtor's] obligation

does not change the point in time at which the obligation arose and became due."[94]

Similarly, the fact that SJW was mistaken as to the timing of Debtor I's obligation to pay

the 2008 Taxes does not change the point in time at which the obligation to pay the 2008

Taxes arose and became due.

    While the sequence of events in October 2008 was certainly complicated, based

on a review of the docket, at least one other lessor in the same situation as SJW was able

to file a timely objection to the Cure Motion.  Centro Properties Group, the landlord for

Goody's store #43, located in Greeneville, Tennessee, filed a timely objection to the Cure

Motion based in part on unpaid property taxes for 2008.[95]  Thus, it seems clear that SJW

---

[92] In fact, SJW negotiated an amendment to the HQ Lease on October 3, 2008 — the day after it received the tax bills — in order to secure Debtor II's continued occupancy of the HQ property. *Id.* at Ex. D [D.I. 1400].

[93] Cure Mot., Cure Notice at 3 [D.I. 813].

[94] 377 B.R. 119, 124 (Bankr. D. Del. 2007).

[95] Centro Properties Group's Objection to Debtors' Motion to Approve Order Fixing Cure Amounts for the Debtors' Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan [D.I. 893] (hereinafter "Centro Properties' Objection").

had sufficient time to file an objection to the Cure Motion before the October 13, 2008 deadline, but simply failed to do so.  Therefore, this factor also weighs against SJW.

### iv. Good Faith

Debtor I argues that SJW's "scattershot approach to litigation," in which it filed motions seeking payment for the 2008 Taxes in both the Debtor I and Debtor II cases, "suggests a lack of good faith by SJW."[96]  However, given the complexities of this case, and the labrynthine timeline, the fact that SJW was unsure whether it should seek recover for the 2008 Taxes from Debtor I or Debtor II is understandable, and does not suggest a lack of good faith.

### v. Conclusion

SJW was aware of, or should have been aware of, the 2008 Taxes and the pending default when it received the Cure Notice.  As evidenced by Centro Properties' timely objection to the Cure Motion, SJW was given sufficient time to file an objection to the Cure Motion before the October 13, 2008 deadline, but simply failed to do so. Therefore, the Court denies SJW's request for relief under Bankruptcy Rule 9006(b) for excusable neglect.

In light of the foregoing, the Court holds that Debtor I is not liable for the 2008 property taxes for the HQ, DC, or Vacant Leases.

---

[96] Sur-Reply at 9 [D.I. 1407].

## II.    Debtor II

SJW is seeking immediate payment from Debtor II for the 2008 Taxes and the 2009 Taxes.[97]   The specific amounts that SJW is seeking from Debtor II are set forth below:[98]

| Debtor II | | |
|---|---|---|
| **Lease** | **Tax Period(s)** | **Amount Claimed Due** |
| Vacant | 2008 (Full) | $7,349.78 |
| DC | 2008 (Full) | $213,565.95 |
| | January – March 2009 | $50,411.50 |
| HQ | January – February 2009 | $27,707.30 |
| **Total** | | **$299,034.53** |

SJW argues that it is entitled to an administrative expense claim for the 2008 Taxes and the 2009 Taxes.[99]   Debtor II does not appear to contest its liability for either the 2008 Taxes or the 2009 Taxes.[100]   Instead, Debtor II argues that neither the 2008 Taxes nor the 2009 Taxes are entitled to administrative expense status, but are rather general unsecured claims.[101]

---

[97] Reply of SJW at ¶ 38, Case No. 09-10124 [D.I. 739].

[98] The amounts differ slightly from the amounts asserted in SJW's filings because at the time of SJW's filings in this case, it had not yet paid the 2008 Taxes to the state of Tennessee, meaning they were still accruing interest.  SJW finally paid the 2008 Taxes to the state on July 27, 2009.  The amounts in the chart above represent the total amount, including penalties, that SJW paid for the 2008 Taxes, according to the Knox County Trustee's website.

[99] *Id.*

[100] Whether or not Debtor II ultimately *should* be liable for the 2008 Taxes, the fact remains that Debtor II has already admitted its liability for, and paid, the 2008 HQ Taxes.  All three Leases contained identical language with regard to property taxes, and all three Leases were assumed and assigned to Debtor II together.

[101] *See* Objection of Debtor II at 5–7, Case No. 09-10124 [D.I. 723].

### A.   2008 Taxes

SJW argues that the 2008 Taxes are entitled to administrative expense status under either section 365(d)(3) or section 503(b)(1)(A).[102]   "Under well-settled law, whether the real estate taxes for the pre-petition period are payable as an administrative expense under section 365(d)(3) rises or falls on when the debtor's obligation to pay those taxes [arose]."[103]   "[A]n obligation only arises when a party becomes legally obligated to perform it."[104]   As established above, the obligation to pay the 2008 Taxes arose on October 1, 2008 — long before the January 13, 2009 petition date in the Debtor II case.  Therefore, the 2008 Taxes are not entitled to administrative status under section 365(d)(3).

In determining whether a claim is entitled to administrative status under section 503(b)(1)(A), courts apply a two-part test: "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction."[105]   In this case, the 2008 Taxes were not part of a post-petition transaction between SJW and Debtor II.  Rather, both the transaction and the benefit which Debtor II received from the 2008 Taxes (namely, continued occupancy of the leased premises for the remainder of 2008) occurred prior to Debtor II's January 13, 2009 petition date.  Thus, the 2008 Taxes do not satisfy either prong of the test.

---

[102] Reply of SJW at 12, Case No. 09-10124 [D.I. 739].

[103] *In re Sportsman's Warehouse*, 436 B.R. at 316.

[104] *In re Goody's Family Clothing*, 392 B.R. at 609.

[105] *In re Garden Ridge Corporation*, 323 B.R. 136, 142 (Bankr. D. Del. 2005) (quoting *In re Waste Systems Intern., Inc.*, 280 B.R. 824, 824 (Bankr. D. Del. 2002)).

For the foregoing reasons, the Court finds that the 2008 Taxes and are not entitled to administrative status, but are instead general unsecured claims.

### B.  2009 Taxes

SJW argues it is entitled to administrative expense claims, under section 503(b), for the 2009 Taxes as follows:

| Lease | Tax Period(s) | Amount Due |
|---|---|---|
| HQ | January – February 2009 | $27,707.30 |
| DC | January – March 2009 | $50,411.50 |
| Total | | $ 78,118.80 |

With regard to the HQ Lease, SJW points to the Assumption Order, entered on March 31, 2009, authorizing the Second HQ Lease Amendment and approving Debtor II's assumption of the HQ Lease, as amended.[106]  The Assumption Order specifically states that "[t]he Debtors shall be responsible for performing all obligations under the HQ Lease, as amended, regardless of when such obligations arose, including payment of prepetition taxes."[107]  Moreover, SJW argues that under the terms of the Second HQ Lease Amendment, Debtor II was required to pay property taxes on a pro rata basis, and notes that Debtor II has paid the March, April and May 2009 taxes.[108]  Debtor II contends that it is "no longer obligated to pay the 2009 Taxes because each of the Leases

---

[106] Assumption Order, Case No. 09-10124 [D.I. 551].

[107] *Id.* at 3.

[108] Reply of SJW at 12, Case No. 09-10124 [D.I. 739].

has been rejected or terminated prior to the 2009 Taxes becoming due."[109]  Debtor II

reasons that the 2009 Taxes did not come "due" under the Leases until October 1, 2009.

Debtor II rejected the DC Lease on March 31, 2009, and terminated the HQ Lease

pursuant to its terms on May 31, 2009.[110]

The Court addressed a similar set of facts just last year in *In re Sportsman's*

*Warehouse*.[111]  The Court described the situation in that case as follows:

> [A]ll three landlords seek allowance of an administrative claim
> under section 503(b) for payment as additional rent of real estate taxes that
> accrued between the Petition Date and the rejection of the applicable lease.
> None of the landlords have been billed for the real estate taxes that have
> accrued.[112]

Citing its recent opinion in *In re Goody's Family Clothing*, the Court held that "a debtor's

use and occupancy of leased premises post-petition is an actual and necessary expense

of preserving the estate."[113]  Because the debtors in *In re Sportsman's Warehouse* had been

occupying all three landlords' premises post-petition, the Court held that, despite the

fact that none of the landlords had been billed for the real estate taxes yet, the debtors'

"use and occupancy of the premises gives rise to an actual and necessary expense of the

estate" under section 503(b)(1).[114]  The Court did note that "while the rent is an actual

and necessary expense, use and occupancy of the premises may provide little or no

---

[109] Objection of Debtor II at 6 [D.I. 723].

[110] *Id.* at 3.

[111] *In re Sportsman's Warehouse*, 436 B.R. 308.

[112] *Id.* at 316.

[113] *Id.* at 315; *In re Goody's Family Clothing*, 392 B.R. at 614 (citing *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990)).

[114] *In re Sportsman's Warehouse*, 436 B.R. at 316–317.

benefit to the estate."[115]   However, the Court made clear that "[t]he amount of the benefit to the estate is presumed to be the contract rate of rent."[116]

Similarly, in this case, Debtor II used and occupied the DC Lease premises through the end of March 2009, and the HQ Lease premises through the end of May 2009.  As such, Debtor II received the benefit of 2009 Taxes, but now seeks to avoid paying for that benefit.  In fact, with regard to the HQ Lease, Debtor II has paid the full 2008 Taxes, as well as the taxes for March, April, and May 2009.  Allowing Debtor II to skip the payments for the January and February 2009 taxes, despite the fact that Debtor II continued to occupy and use the premises during that time, and despite the fact that Debtor II paid taxes for March, April, and May 2009, would be an inconsistent and inequitable result.

Thus, the Court concludes that SJW is entitled to administrative expense claims for the 2009 Taxes.

### C.  Conclusion

For the reasons set forth above, the Court holds that SJW is only entitled to general unsecured claims against Debtor II for the 2008 property taxes on the DC and Vacant Leases.  The Court further holds that SJW is entitled to administrative expense claims against Debtor II, under section 503(b)(1), for the 2009 property taxes on the HQ and DC Leases.  SJW's claims against Debtor II are set forth below:

---

[115] *Id.* at 315.

[116] *Id.*

| SJW's Claims Against Debtor II | | |
|---|---|---|
| Lease | Tax Period(s) | Amount Due (Priority) |
| Vacant | 2008 (Full) | $7,349.78 (General Unsecured) |
| DC | 2008 (Full) | $213,565.95 (General Unsecured) |
| | January – March 2009 | $50,411.50 (Administrative) |
| HQ | January – February 2009 | $27,707.30 (Administrative) |
| **Total General Unsecured** | | **$220,915.73** |
| **Total Administrative** | | **$78,118,80** |

## CONCLUSION

For the reasons set forth above, the Court will deny SJW's Motion to Compel in the Debtor I case.  The Court will also deny that portion of SJW's Motion to Compel in the Debtor II case seeking payment of the 2008 taxes as an administrative expense.  SJW has an allowed general unsecured claim in the amount of $220,915.73 in connection with those taxes.  The Court will, however, grant SJW's Motion to Compel in the Debtor II case as to the 2009 property taxes on the HQ and DC Leases.  Thus, SJW has an allowed administrative expense claim in the amount of $78,118.80.  Finally, the Court

will deny SJW's request for immediate payment of its claims.[117] An appropriate order will be issued.

---

[117]  SJW has failed to meet the standard for requiring such immediate payment.  *See generally In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 614-617 (Bankr. D. Del. 2008).

## Appendix I

### Debtor I Pre-Petition

**1/1/08**      2008 Taxes become personal liability of SJW under Tenn. Code Ann. § 67-5-2101

### Debtor I Post-Petition

**6/9/08**      Debtor I files for bankruptcy [D.I. 1][118]

**8/26/08**     Debtor I files the Debtor I Plan [D.I. 589]

**9/26/08**     Notice of (1) October 6 Confirmation Hearing; and (2) September 29 deadline for objections to the Plan [D.I. 595]

**9/29/08**     Deadline for objections to the Debtor I Plan [*see* D.I. 584]

**10/1/08**     2008 Taxes due under Tenn. Code Ann. § 67-1-701(a)

**10/2/08**     Debtor I files Cure Motion, which includes the Cure Notice [D.I. 813]

            SJW receives 2008 Tax Bills, and notifies Debtor I via email that the 2008 Taxes are due

**10/3/08**     SJW and Debtor I execute First HQ Lease Amendment [D.I. 1400, Ex. D]

**10/6/08**     Confirmation Hearing [D.I. 845]

**10/7/08**     Court enters Confirmation Order [D.I. 849] confirming the Debtor I Plan [D.I. 847]

**10/8/08**     Debtor I is in default for nonpayment of the 2008 property taxes

**10/13/08**    Deadline for objections to Cure Motion (including Cure Amounts) [*see* D.I. 813]

**10/20/08**    Court enters Cure Order [D.I. 943]

            Debtor I Plan Effective Date — SJW's Leases assumed and assigned to Debtor II

            Notice of Administrative Bar Date for Debtor I cases [D.I. 951]

### Debtor I Post-Confirmation / Debtor II Pre-Petition

**12/4/08**     Administrative Bar Date for Debtor I cases [D.I. 951]

**12/31/08**    Vacant Lease terminated [D.I. 1400, pg. 13]

### Debtor II Post-Petition

**1/13/09**     Debtor II files for bankruptcy [D.I. 1, Case No. 09-10124]

**2/28/09**     Last day before 2008 Taxes are delinquent under Tenn. Code Ann. § 67-5-2010(a)(1)

---

[118] Unless otherwise indicated, all docket entries refer to the Debtor I docket, Case No. 08-11133.

**3/1/09**    Penalty begins to accrue on unpaid 2008 Taxes under Tenn. Code Ann. § 67-5-2010(a)(1)

SJW and Debtor II execute Second HQ Lease Amendment [D.I. 476, Case No. 09-10124]

**3/16/09**    Debtor II files Motion for Authorization of Second HQ Lease Amendment, and Assumption of HQ Lease, as amended [D.I. 476, Case No. 09-10124]

**3/31/09**    Assumption Order [D.I. 551, Case No. 09-10124]

          Debtor II cures HQ Lease default re: unpaid 2008 Taxes [D.I. 551, Case No. 09-10124]

          Debtor II assumes HQ Lease [D.I. 551, Case No. 09-10124]

          Debtor II rejects DC Lease [*see* D.I. 723 at ¶7, Case No. 09-10124]

**5/31/09**    Debtor II terminates HQ Lease, pursuant to its terms [D.I. 723 at ¶ 7, Case No. 09-10124]