## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- X

In re:

GOODY'S, LLC, et al.,[1]

             Debtors.

Chapter 11

Case No. 09-10124 (CSS)

Jointly Administered

**Hearing Date:  March 13, 2013 at 10:00 a.m. (ET)**
**Objection Deadline:  February 15, 2013 at 4:00 p.m. (ET)**
**RE:  Docket Nos. 996 and 1101**

-------------------------------------------------------------- X

### DEBTORS' MOTION PURSUANT TO §§ 105 AND 505 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER ENFORCING THE PLAN INJUNCTIONS AND DETERMINING THE DEBTORS' LIABILITY FOR CERTAIN EMPLOYMENT TAXES

The above-captioned debtors (collectively, the "Debtors") hereby submit this

motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit

B (the "Proposed Order"), enforcing provisions of the *Debtor's First Amended Plan of*

*Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code* [D.I. 996] (the "Plan")

and determining the Debtors' liability for certain employment withholding taxes the Internal

Revenue Service (the "IRS") has alleged are due from the Debtors.  In support of this Motion,

the Debtors respectfully represent as follows:

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are:  Goody's, LLC (9573); New SYDOOG LLC (2047); New Trebor of TN, LLC (2157); New GOFAMCLO, LLC (2268); New Goody's Giftco, LLC (2366); New Goody's MS, L.P. (2490); New GFCTX, L.P. (2581); New Goody's IN, L.P. (3191); New GFCTN, L.P. (3266); New GFCGA, L.P. (3366); New Goody's ARDC, L.P. (3486); New Goody's Retail MS, L.P. (3527); New Goody's Holding TN, LLC (3620); and New Goody's TNDC, L.P. (3673).  Effective as of November 5, 2010, the address for the Debtors to receive all notices and mailings is:  David Peek, c/o Edison Learning, 900 South Gay Street, Knoxville, TN 37902.  The Debtors' prior mailing address was 504 Rolling Creek Road, Knoxville, TN  37934.

## PRELIMINARY STATEMENT[2]

1.      The IRS asserts that the Debtors owe certain employment withholding taxes arising from payments of wage claims made by the Debtors pursuant to the Plan.  In connection with this assertion, the IRS has issued a *Financial Records Summons* dated August 9, 2011, a *Notice of Federal Tax Lien* dated August 10, 2011, a *Notice to James W. Mongin* dated August 9, 2011, a *Notice to David G. Peek* dated December 27, 2011, and a *Notice of Proposed Assessment* dated February 8, 2012 (the "Proposed Assessment") pursuant to which the IRS proposes to assess a trust fund liability against David G. Peek for allegedly unpaid trust fund taxes.

2.      The Debtors paid allowed wage claims (the "Wage Claims") in December 2010 and February 2011 in accordance with the Plan and, at that time, withheld the appropriate amounts of employment taxes from the Wage Claims (the "Withheld Amounts").

3.      The Debtors deposited all Withheld Amounts with the IRS utilizing the Electronic Federal Tax Payment System (the "EFTPS").  The Withheld Amounts that have been paid were equal to the employees' shares of both the applicable employment taxes and income taxes (the "Trust Fund Liability").

4.      The Debtors reported to the IRS that such Withheld Amounts related to the fourth quarter of 2010 and the first quarter of 2011, and the Debtors have requested that the IRS apply all such Withheld Amounts to satisfy the Trust Fund Liability as permitted by the IRS's Revenue Procedure 2002-26, which allows a taxpayer to specifically allocate payments. The IRS, however, has applied the Withheld Amounts to the employer liability obligation (the "Employer Liability") the IRS has alleged arose as result of the payment of the Wage Claims.

---

[2]      Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the Plan.

Furthermore, the IRS has asserted that the Trust Fund Liability remains outstanding even though the Debtors specifically allocated the payments in question to the Trust Fund Liability in accord with the IRS's own procedure.

5.    The Debtors did not pay Employer Liability the IRS alleges is owed because (a) such amounts are pre-petition taxes, (b) the IRS had not filed a proof of claim seeking payment of those taxes, and (c) the Governmental Bar Date was July 13, 2009.  Because the IRS failed to timely file a proof of claim,[3] (a) the IRS's claim for the Employer Liability is a Disallowed Claim under the Plan and (b) the IRS's application of the Withheld Amounts to the Employer Liability is in violation of the Plan and the Confirmation Order.  Therefore, the only possible liability to which the IRS could have properly applied the Withheld Amounts was the Trust Fund Liability.  Moreover, even if the IRS had filed a claim, the Court has the authority to allow the Debtors to designate that their electronic payment of the Withheld Amounts be applied to Trust Fund Liability rather than the Employer Liability.

6.    The Debtors, therefore, respectfully request that this Court (i) order the IRS to properly apply the Debtors' payments of the Withheld Amounts to the Trust Fund Liability and (ii) order that any future amounts paid to the IRS on account of payments made under the Plan be applied first to any Trust Fund Liability without further order of this Court.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan, and the *Amended Standing Order of Reference* from the

---

[3]    Because no claim has yet been filed for the Employer Liability, the IRS would be required to seek leave of this court to file a late claim in order to be entitled to a claim for such liability.  It is well-established that to be granted leave to file the late claim, the IRS, as the moving party, would have to establish that the failure to timely file its claim was the result of "excusable neglect."  It is unlikely that the IRS would be able to meet this burden. To date, the IRS has not provided any reason for having failed to file a Claim for the Employer Liability prior to the Governmental Bar Date and this Court has previously denied a similar request by a state taxing authority.  See Hr'g Tr. 11:22–13:3, Apr. 20, 2011 (the "Goody's Transcript").  A copy of the Goody's Transcript is attached hereto as Exhibit A.

01:11440252.3

United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicates for the relief requested herein are sections 105(a) and 505(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

### RELEVANT BACKGROUND

9.      On January 13, 2009 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief in this Court under chapter 11 of the Bankruptcy Code. Until the effective date of the Plan, the Debtors continued to manage their property as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

10.      On January 15, 2009, this Court entered an order appointing Logan & Company, Inc. ("Logan") as noticing and balloting agent in these chapter 11 cases [D.I. 73].

11.      On January 26, 2009, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Committee"). No request was made for the appointment of a trustee or examiner.

12.      On March 16, 2009, each of the Debtors filed its *Schedules of Assets and Liabilities* (collectively, the "Schedules" and, each, a "Schedule") and *Statement of Financial Affairs* (collectively, the "Statements" and, each, a "Statement"). *See* D.I. 479–492. Goody's, LLC listed the IRS on Schedule E as an unliquidated, unsecured priority claimant. *See* D.I. 492 Sched. E at 34.

13.      On April 17, 2009, the Court entered its *Order (I) Establishing General Bar Date and Procedures for Filing Proofs of Claim, and (II) Approving Form and Manner of*

*Notice Thereof* [D.I. 590] (the "Bar Date Order").  The Bar Date Order required proofs of claim asserting prepetition claims against any of the Debtors to be filed with Logan on or before (i) June 22, 2009 (the "General Bar Date"), by creditors other than governmental entities (as defined in 11 U.S.C. § 101(27)) and (ii) July 13, 2009 (the "Governmental Bar Date" and, together with the General Bar Date, each a "Bar Date"), by governmental entities.  To the extent a creditor failed to file the requisite proof of claim in accordance with the Bar Date Order, the creditor is "not be treated as a creditor with respect to such claim for purposes of voting upon, or receiving distributions under, any plan."  Bar Date Order at ¶ 13.

14.     In accordance with the Bar Date Order, on April 23, 2009, Logan served the *Notice of Deadline for Filing Proofs of Claim* [D.I. 590 Ex. A] (the "Bar Date Notice") and a proof of claim form ("Claim Form") on the IRS (*see* D.I. 623 Ex. A at 318), which is represented by the U.S. Attorney's office.  As set forth in the Bar Date Notice, the Claim Form indicated that the Debtors had scheduled the IRS's claim as an unliquidated, unsecured priority claim in Goody's, LLC's Schedules.  The Bar Date Notice stated that any entity with a prepetition claim listed as "unliquidated" that "desires to participate in these chapter 11 cases or share in any distribution in these chapter 11 cases" must file a proof of claim before the applicable Bar Date. Bar Date Notice at 3.

15.     The IRS never filed a proof of claim related to the Employer Liability.

16.     On December 23, 2009, the Debtors filed the Plan and related disclosure statement [D.I. 997] (the "Disclosure Statement").  On January 7, 2010, the Court approved the Disclosure Statement and granted related relief [D.I. 1005].

17.     On March 3, 2010 (the "Confirmation Date"), the Court entered an order

[D.I. 1101] confirming the Plan.  The Plan went effective on November 4, 2010 (the "Effective

Date").  *See* D.I. 1329.

18.     Pursuant to Section 6.2 of the Plan, as of the Confirmation Date:

> [a]ny Claim that was required to be filed by the Bar Date or the
> Administrative Expense Claims Bar Date (as the case may be) that
> is instead filed after such applicable Bar Date or Administrative
> Expense Claim Bar Date shall be deemed disallowed without
> further action or order of the Bankruptcy Court or the Debtors.

Plan at § 6.2.

19.     Payments on account of the Wage Claims were made on December 17,

2010 and February 18, 2011.  The Debtors properly withheld the appropriate amounts of

employment taxes from the Wage Claims (the "Withheld Amounts").

20.     Goody's, LLC filed the requisite 941 forms reporting the taxes that are the

subject of this Motion after the associated Wage Claims were paid as part of the final claims

reconciliation process.  These returns were timely filed on January 31, 2011 and April 30, 2011.

21.     The Debtors deposited all Withheld Amounts with the IRS utilizing the

EFTPS.  The Withheld Amounts that have been paid were equal to the Trust Fund Liability.  The

Debtors reported to the IRS that such Withheld Amounts related to the fourth quarter of 2010

and the first quarter of 2011, and the Debtors requested that the IRS apply all such Withheld

Amounts to satisfy the Trust Fund Liability as permitted by the IRS's own Revenue Procedure

2002-26.

22.     The IRS, however, sent a notice pursuant to which it asserted that it was

investigating whether any individuals, including Mr. Peek, should be treated as "responsible

persons" liable for unpaid trust fund taxes.  The Debtors have attempted to work with the IRS to

resolve the issues with the Trust Fund Liability, but the IRS has refused to apply the Debtors'

payment of the Withheld Amounts to the Trust Fund Liability.

        23.      Despite the Debtors' efforts, the IRS issued the Proposed Assessment and

in light of the Proposed Assessment, the IRS has refused to provide Mr. Peek with the personal

tax refund he is owed for 2012, instead holding the refund in case it determines that the refund

should be applied to the Trust Fund Liability.  Goody, LLC and Mr. Peek have appealed the

Proposed Assessment.

**RELIEF REQUESTED**

        24.      By this Motion, the Debtors seek entry of an order (a) enforcing the

injunctive provisions of the Plan and seeking a determination from this Court, pursuant to

§§ 505(a) and 105(a) of the Bankruptcy Code, that the Debtors have satisfied the Trust Fund

Liability and (b) requiring that any future amounts paid to the IRS that the Debtors designate are

to be applied to any Trust Fund Liability pursuant to Revenue Procedure 2002-26 on account of

payments made under the Plan shall be applied by the IRS first to any Trust Fund Liability

without the need for the Debtors to seek any further order of this Court directing the IRS to do

so.

**BASIS FOR RELIEF REQUESTED**

        25.      Section 505(a) of the Bankruptcy Code grants this Court the power to

"determine the amount or legality of any tax" so long as the issue was not adjudicated by a court

or administrative body prior to commencement of the bankruptcy case.  11 U.S.C. § 505(a).

That power applies whether or not the tax was previously assessed or paid.  *Id.*

        26.      Bankruptcy Code section 505 is to be interpreted broadly.  "[T]he

parameters of a bankruptcy court's jurisdiction over the subject matter of federal and state

01:11440252.3

income taxation under 11 U.S.C.§ 505(a)(1) correspond with general principles governing a

bankruptcy court's power to adjudicate at least core matters under 28 U.S.C. § 157." *In re*

*Continental Airlines, Inc.*, 138 B.R. 430, 433 (Bankr. D. Del. 1992), *rev'd on other grounds*, 149

B.R. 76 (D. Del. 1993), *aff'd in part, rev'd in part*, 8 F.3d 811 (3d Cir. 1993) (Table), *cert.*

*denied*, 510 U.S. 1192 (1994) (internal citations omitted).

        27.    The Debtor's right to a determination of its tax liability in this Court is

well established. *See In re G-I Holdings, Inc.*, 295 B.R. 222, 224 (Bankr. D.N.J. 2003) ("It is

well established in the Third Circuit that a bankruptcy court has the ability to determine any and

all issues of tax liability of debtors, when there has been no prior determination by any state,

judicial or judicial body."). As noted by the court in *In re American Motor Club, Inc.*, "[t]he

legislative intent behind § 505 was 'to afford a forum for the ready determination of the legality

or amount of tax claims, which determination, if left to other proceedings, might delay

conclusion of the bankruptcy estate.'" 139 B.R. 578, 581 (Bankr. E.D.N.Y. 1992) (citing *In re*

*Kaufman*, 115 B.R. 378, 379 (Bankr. S.D. Fla. 1990) (internal citation omitted)).

        28.    Courts in this jurisdiction have previously set forth the framework for a

bankruptcy court's section 505 analysis as the following:

> The analysis necessarily includes balancing the Bankruptcy
> Court's need to administer the bankruptcy case in an orderly and
> efficient manner, the complexity of the tax issues to be decided,
> the asset and liability structure of the debtor, the length of time
> required for trial and decision, judicial economy and efficiency, the
> burden on the Bankruptcy Court's docket, prejudice to the debtor
> and potential prejudice to the taxing authority responsible for
> collection from inconsistent assessments.

*Continental Airlines*, 138 B.R. at 434 (citing *In re Hunt*, 95 B.R. 442, 445 (Bankr. N.D. Tex.

1989)); *see also In re D'Alessio*, 181 B.R. 756, 759; *American Motor Club*, 129 B.R. at 581.

29.     Here, consideration of the above factors weighs in favor of a section 505 determination of the Debtors' Trust Fund Liability.  The determination should not require significant time or resources of the Court as the facts are not contested and the dispute centers around core bankruptcy issues, such as the claims process and effects of plan confirmation, rather than complex tax issues.  In addition, a prompt determination will allow the Debtors to continue making distributions pursuant to the Plan and move closer to closing these chapter 11 cases, as well as resolving the Proposed Assessment, without incurring unnecessary costs.  As such, this Court is best situated to make the determination regarding the Debtors' Trust Fund Liability.

30.     Section 105(a) of the Bankruptcy Code provides another basis for the relief requested herein.  Section 105 authorizes the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.  Section 105 grants "bankruptcy courts, as courts of equity, . . . broad authority to modify creditor-debtor relationships."  *U.S. v. Energy Resources*, 495 U.S. 545, 549 (1990).

31.     The relief requested herein is necessary to protect the integrity of the claim and plan process and to ensure that the Debtors' payment of the Withheld Amounts to the IRS can be properly applied to the Trust Fund Liability.

A.     **The IRS Improperly Applied the Debtors' Payments in Violation of the Plan and Confirmation Order**

32.     The IRS applied the Debtors' payment of the Withheld Amounts to the Employer Liability rather than to the Trust Fund Liability.  While no separate proof of claim is required for the Trust Fund Liability, because the taxes are subtracted from the amounts already reflected in an employee's proof of claim, a proof of claim is required for the Employer Liability. This is because the Employer Liability represents an additional liability above what is reflected

in an employee's proof of claim.  The IRS, however, never filed a proof of claim seeking payment of the Employer Liability.

33.     Because the IRS failed to timely file a proof of claim before the Governmental Bar Date, which was on July 13, 2009, any claim the IRS would make for the Employer Liability would be a Disallowed Claim under the Plan.  Plan at § 1.2.31.  Under Article IV of the Plan, only *Allowed* Priority Claims are entitled to receive a distribution under the Plan.  Moreover, the Plan does not permit the IRS to effect a setoff.  *See In re Continental Airlines*, 134 F.3d 536, 541 (3d Cir. 1998) (holding that federal government's setoff rights were extinguished upon confirmation of chapter 11 plan that made no provision for such setoff).

34.     The Plan, which is binding on all creditors pursuant to section 1141(a) of the Bankruptcy Code, contains certain satisfaction and injunctive provisions.  The satisfaction provision states, in relevant part:  "The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full satisfaction of such holders' respective Claims against the Estates."  Plan Art. 12.1.

35.     The injunctive provision states:

> From and after the Effective Date all Persons that have held, currently hold or may hold a Claim or other debt or liability against any of the Debtors or their Estates, or who have held, currently hold or may hold an Equity Interest in the Debtors, are permanently enjoined from taking any of the following actions (whether directly, indirectly, derivatively or otherwise) on account of such Claim or Equity Interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Debtors, the Estates, the Liquidating Agent, the Committee or the Post-Effective Date Committee with respect to any property to be distributed under this Plan including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against any of the Debtors, the

01:11440252.3

Estates or the Liquidating Agent, Committee and Post-Effective Date Committee with respect to any property to be distributed under this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors, the Estates or the Liquidating Agent with respect to any property to be distributed under this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) *proceeding in any manner in any place whatsoever against any of the Debtors, the Estates, or the Liquidating Agent, Committee and Post-Effective Date Committee with respect to any property to be distributed under this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan*; provided, however, that nothing in this Section 12.2 shall prohibit any Person from enforcing the terms of the Asset Purchase Agreements, this Plan, or the Confirmation Order in the Bankruptcy Court.

Plan Art. 12.2 (emphasis added). In addition, paragraph eighteen (18) of the Confirmation Order incorporates the foregoing provisions.

36.    Because the IRS never filed a proof of claim for the Employer Liability, the IRS's application of the Withheld Amounts to the Employer Liability was in violation of the Plan and Confirmation Order. Furthermore, any claim the IRS would file at this point in time for the Employer Liability would necessarily be a Disallowed Claim and, therefore, the IRS would not be entitled to any distribution on account of such claim. Because of this, the IRS's application of the Withheld Amounts to the Employer Liability is in violation of Plan and Confirmation Order and, for both of these reasons, it was improper. The only possible liability to which the IRS could have properly applied the Withheld Amounts was the Trust Fund Liability and, therefore, the Debtors respectfully request that the Court void the IRS's application of the Withheld Amounts to the Employer Liability and order the IRS to apply the Withheld Amounts to the Trust Fund Liability.

01:11440252.3

**B.**     **Even If the IRS Had a Valid Claim for the Employer Liability, This Court**
         **Can Order the IRS to Apply the Withheld Amounts to the Trust Fund Liability**

37.     Revenue Procedure 2002-26 provides that "[i]f additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer . . . at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions."  In addition, Revenue Procedure 2002-26 further provides that if "the taxpayer does not provide specific written directions as to the application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest."

38.     In *In re Thorne*, the bankruptcy court found "that there was no way to contemporaneously designate an electronic payment," because the only way to designate a payment would have subjected the debtors to a failure to deposit penalty, and that the "IRS cannot reasonably take the position that the debtors must subject themselves to a penalty in order to designate their tax payments."  107 AFTR 2d 2011-1551 (Bankr. E.D.N.C. 2011).  In light of this, the court in *In re Thorne* held that it would be inequitable to allow the IRS to designate how the debtors' tax payment should be allocated and proceeded to allocate the entire payment to taxes for which there was trust fund liability.

39.     The United Supreme Court has held that "a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan."  *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990).

40.     The Debtors were required to make payments of employment taxes arising from payments of Wage Claims through the EFTPS.  The Debtors subsequently requested that

the IRS apply all such Withheld Amounts to satisfy the Trust Fund Liability as permitted by the

IRS's own Revenue Procedure 2002-26.

41.    Allowing the IRS to refuse to designate the Debtors' tax payments to the

Trust Fund Liability and instead to apply the Withheld Amounts to the Employer Liability would

be inequitable and prejudice the Debtors' estates.  It would require the Debtors to fund the Trust

Fund Liability over three and a half years after the Governmental Bar Date, over two years after

the Confirmation Date, and after reserves have been funded and significant distributions have

been made pursuant to the Plan.  Because the IRS did not file the requisite proof of claim, the

Debtors have not reserved for the Trust Fund Liability.  The Debtors reasonably relied on the

finality of the Bar Dates and proceeded with formulating, confirming, and ultimately

implementing the Plan under the belief that the IRS (and other similarly situated parties) would

not participate in distributions under the Plan.  See In re Trump Taj Mahal Assocs., 156 B.R.

928, 936 (Bankr. D.N.J. 1993) ("The well-established law of this Circuit is that bar dates for

filing Proofs of Claim are strictly construed.").  Consequently, the Debtors' estates would be

prejudiced by allowing the IRS to apply the Withheld Amounts to the Employer Liability at this

juncture in the cases.

## NOTICE

42.    Notice of this motion has been given to (i) the IRS, (ii) the Office of the

United States Trustee; (iii) counsel to the Committee; (iv) counsel to the Debtors' pre-petition

lenders; and (v) those parties who have requested notice pursuant to Bankruptcy Rule 2002, in

accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested, the Debtors

respectfully submit that no further notice is necessary.

01:11440252.3

WHEREFORE, the Debtors respectfully requests that the Court enter an order (i) enforcing the injunctive provisions of the Plan and determining that the Debtors have satisfied the Trust Fund Liability; (ii) requiring that any future amounts paid to the IRS that the Debtors designate are to be applied to any Trust Fund Liability pursuant to Revenue Procedure 2002-26 on account of payments made under the Plan shall be applied by the IRS first to any Trust Fund Liability without the need for the Debtors to seek any further order of this Court directing the IRS to do so; and (iii) granting the Debtors such other and further relief as is just and proper.

Dated:   Wilmington, Delaware
         January 31, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime Luton Chapman
M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571–6600
Facsimile:  (302) 571–1253

*Counsel for the Debtors*