# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| GOODY'S LLC, et al., | ) | |
| | ) | Case No. 09-10124 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## OPINION[1]

| | |
|---|---|
| YOUNG CONAWAY STARGATT<br>& TAYLOR, LLP<br>M. Blake Cleary<br>Margaret B. Whiteman<br>Jaime Luton Chapman<br>Andrew L. Magaziner<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801 | U.S. DEPARTMENT OF JUSTICE<br>Kathryn Keneally<br>Assistant Attorney General<br>Ann E. Nash<br>Trial Attorney, Tax Division<br>P.O. Box 227<br>Ben Franklin Station<br>Washington, DC 20044 |

Counsel for the Liquidating Agent

Dated: May 13, 2014

Sontchi, J. _____

## INTRODUCTION

Before the Court is a motion filed by the Debtors[2] to enforce the Plan injunctions

and to determine the Debtors' liability for certain employment taxes. Pursuant to the

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them *infra*.

Debtors' Plan, the Debtors made distributions to employees on behalf of pre-petition wages earned by those employees. As part of the distributions, the Debtors withheld various amounts from those distributions for federal taxes. After the distributions, the Debtors electronically submitted the amounts withheld to the IRS and filed the appropriate tax returns. The Debtors subsequently requested that the amounts paid be designated to the Trust Fund Liability taxes. Instead, the IRS applied the amounts paid to the Employer Liability taxes (that also related to the distributed amounts) and the IRS then sought the unpaid portion of the Trust Fund Liability from the Liquidating Agent as "responsible person." Additionally, the IRS did not file a proof of claim by the applicable bar date for the Employer Liability taxes.

Herein, the Court finds that the IRS's claim for Employer Liability is a pre-petition claim but that the IRS did not need to file a proof of claim by the Bar Date for such liability. As such, the IRS's claim for Employer Liability taxes is not barred. Furthermore, the Court is without sufficient evidence to designate the tax payment to the Trust Fund Liability. As such, the Court denies the Motion, with prejudice, in part, and without prejudice, in part.

## STATEMENT OF FACTS

### A.    General Background

On January 13, 2009, each of the above-captioned debtors (the "Debtors") commenced a case by filing a petition for relief in this Court under chapter 11 of the Bankruptcy Code. Until the effective date of the Plan (discussed *infra*), the Debtors

continued to manage their property as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On March 16, 2009, each of the Debtors filed its *Schedules of Assets and Liabilities* (collectively, the "Schedules" and each a "Schedule") and *Statement of Financial Affairs* (collectively, the "Statements" and each a "Statement").[3]  Goody's LLC listed the IRS on Schedule E as an unliquidated, unsecured priority claimant.[4]   Thereafter, the Court established various bar dates for prepetition claims.[5]   The Internal Revenue Service ("IRS") was served with notice of the Bar Date and a proof of claim form indicating that the Debtors had scheduled the IRS's claim as an unliquidated, unsecured priority claim in Goody's LLC's Schedules.[6]   The Bar Date notice stated that any entity with a prepetition claim listed as "unliquidated" that "desires to participate in these chapter 11 cases or share in any distribution in these chapter 11 cases" must file a proof of claim before the applicable Bar Date.

The IRS did not file a proof of claim related to the taxes at issue in this matter.

---

[3]  D.I. 479-492.

[4]  D.I. 492 (Schedule E at p. 34 of 1390).

[5]  On April 17, 2009, the Court entered its *Order (i) Establishing General Bar Date and Procedures for Filing Proofs of Claim, and (ii) Approving Form and Manner of Notice Thereof* (D.I. 590) (the "Bar Date Order").  The Bar Date Order required proofs of claim asserting prepetition claims against any of the Debtors to be filed with the claims agent on or before (i) June 22, 2009 (the "General Bar Date"), by creditors other than governmental entities (as defined in 11 U.S.C. § 101(27)); and (ii) July 13, 2009 by governmental entities (the "Governmental Bar Date" and together with the General Bar Date, the "Bar Date").

[6]  D.I. 509 and 623.

On December 23, 2009, the Debtors filed the Plan and related disclosure statement.[7]  Thereafter, on March 3, 2010 (the "Confirmation Date"), the Court entered an order confirming the Plan.[8]  The Plan went effective on November 4, 2010.[9]

Pursuant to Section 6.2 of the Plan, as of the Confirmation Date:

> [a]ny Claim that was required to be filed by the Bar Date or the Administrative Expense Claims Bar Date (as the case may be) that is instead filed after such applicable Bar Date or Administrative Expense Claim Bar Date shall be deemed disallowed without further action or order of the Bankruptcy Court or the Debtors.[10]

The Plan also contains a satisfaction provision which states, in part: "The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full satisfaction of such holders' respective Claims against the Estates."[11]  The Plan also contained an injunction against collection of pre-petition claims.[12]

---

[7]  D.I. 997.

[8]  D.I. 1101.

[9]  *See* D.I. 1329.

[10]  Plan at § 6.2.

[11]  Plan Art. 12.1.

[12]  The injunction provision states:

> From and after the Effective Date all Persons that have held, currently hold or may hold a Claim or other debt or liability against any of the Debtors or their Estates, or who have held, currently hold or may hold an Equity Interest in the Debtors, are permanently enjoined from taking any of the following actions (whether directly, indirectly, derivatively or otherwise) on account of such Claim or Equity Interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Debtors, the Estates, the Liquidating Agent, the Committee or the Post-Effective Date Committee with respect to any property to be distributed under this Plan including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against any of the Debtors, the

On the Effective Date, pursuant to the terms of the Plan, David Peek was appointed as Liquidating Agent (as defined in the Plan).[13]  The Plan contains a limitation of liability of various people, including the Liquidating Agent.[14]  The Plan further provides for indemnification of the Liquidating Agent for claims related to his duties.[15]

---

> Estates or the Liquidating Agent, Committee and Post-Effective Date Committee, with respect to any property to be distributed under this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors, the Estates or the Liquidating Agent with respect to any property to be distributed under this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) proceeding in any manner in any place whatsoever against any of the Debtors, the Estates, or the Liquidating Agent, Committee and Post-Effective Date Committee with respect to any property to be distributed under this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; provided, however, that nothing in this Section 12.2 shall prohibit any Persons from enforcing the terms of the Asset Pursuant Agreements, this Plan, or the Confirmation Order in the Bankruptcy Court.

Plan Art. 12.2.

[13]  Plan Art. 8.3. *See also* Confirmation Order at Finding L.

[14]  In pertinent part, the Plan states:

> Notwithstanding anything in this Plan to the contrary, no Person serving as Liquidating Agent shall have or incur any personal liability as the shareholder, director or officer of any of the Debtors for any act taken or omission made in connection with Article VIII of this Plan, except for any personal liability of such Person that would not have resulted but for an act or omission of such Person that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.

Plan Art. 12.4 (emphasis removed).

[15]  In pertinent part, the Plan provides:

> The Debtors will indemnify, hold harmless and reimburse the Exculpated Persons, the Liquidating Agent (including any Person serving as the Liquidating Agent) . . . from and against any and all losses, claims, causes of action, damages, fees, expenses, liabilities, and actions arising from or related to any act taken or omission made in connection with or in any way related to negotiating, formulating, implementing, confirming, consummating or administering this Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created

### B.    Factual History

Pursuant to the terms of the Plan, the Debtors paid allowed wage claims (the "Wages Claims") on December 17, 2010 and February 18, 2011.  The Debtors withheld employment taxes from the Wage Claims (the "Withheld Amounts").  Goody's LLC, one of the Debtors, filed the requisite 941 tax returns reporting the taxes associated with the Wage Claims.[16]

The Debtors deposited all Withheld Amounts with the IRS utilizing the Electronic Federal Tax Payment System (the "EFTPS").  The Withheld Amounts that have been paid were equal to the employees' shares of both the applicable employment taxes and income taxes (the "Trust Fund Liability").

Thereafter, the Debtors requested that the IRS apply the remitted Withheld Amounts to the Trust Fund Liability.  As it happens, the IRS applied the Withheld Amounts to the employer liability obligation (the "Employer Liability"), which the IRS claims arose as a result of the payment of the Wage Claims.  The IRS further asserted that the Trust Fund Liability remains outstanding.

---

in connection with or related to this Plan or the Bankruptcy Cases, or any other act taken or omission made in connection with the Bankruptcy Cases, and the losses, claims and expenses of such Persons shall be paid from the Estate Assets as they are incurred by such Persons; provided that the Debtors will not indemnify, hold harmless or reimburse any Person pursuant to the foregoing provisions of this Section from or against any losses, claims, causes of action, damages, fees, expenses, liabilities or actions resulting from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct. All rights of the Exculpated Persons and other Persons indemnified pursuant to Sections 12.4 and 12.5 of this Plan shall survive confirmation and effectiveness of this Plan

Plan Art. 12.5.

[16]  The 941 tax returns in connection with the December 17, 2010 and February 18, 2011 distributions were filed on January 31, 2011 and April 30, 2011, respectively.

Although this issue is not presently before the Court, the IRS sent a notice pursuant to which it asserted that it was investigating whether any individuals, including Mr. Peek, should be treated as "responsible persons" liable for unpaid trust fund taxes.[17] The Debtors claim that any such liability incurred by Mr. Peek related to the Trust Fund Liability will trigger the indemnification provisions of the Plan.

The Debtors assert that the amounts must be applied to the Trust Fund Liability because the IRS did not file a claim for the Employer Liability and that the IRS is now barred by the applicable Bar Dates and the Plan Injunction from seeking any payment on account of Employer Liability. The Debtors further assert that *even if* the IRS has a valid claim for the Employer Liability, the Court should designate the tax payment to the Trust Fund Liability.

### C.    Procedural Posture

The Debtors filed the *Motion Pursuant to §§ 105 and 505 of the Bankruptcy Code for Entry of an Order Enforcing the Plan Injunctions and Determining the Debtors' Liability for Certain Employment Taxes* (the "Motion"),[18] to which the U.S. Department of Justice, Tax Division (referred to herein as the "IRS") responded.[19] The Court heard oral argument

---

[17] The IRS issued a Proposed Assessment and has refused to provide Mr. Peek with the personal tax refund he is owed for 2012, instead the IRS is holding the refund in the event that the refund should be applied to the Trust Fund Liability.

[18] D.I. 1633.

[19] D.I. 1646.

on the Motion[20] and took the matter under advisement.  The Motion is ripe for the Court's consideration.

## ANALYSIS

**A.      Trust Fund and Non-Trust Fund Taxes**

Employment tax is comprised of trust fund and non-trust fund taxes.  The Internal Revenue Code requires employers to withhold federal income and social security taxes from salaries and wages of employees.[21]  An employer is required to remit these withheld amounts to the government on behalf of the employee.[22]  Employers hold these taxes for the benefit of and in trust for the United States, as a result, these taxes are typically called "trust fund taxes" (referred to herein as the "Trust Fund Liability").  Employers are also responsible to match the amount of Social Security and Medicare taxes and remit these amounts to the government.[23]  As these amounts are the employer's responsibility, rather than amounts withheld from an employee's pay, these amounts are referred to as non-trust fund taxes (referred to herein as the "Employer Liability").

The United States has no recourse against individual employees for the "trust fund taxes," as such, Congress created a statutory remedy to ensure that trust fund tax revenues were not lost.[24]  "An employer who fails to pay taxes withheld from its

---

[20]  *See* D.I. 1672.

[21]  26 U.S.C. § 3102(a).

[22]  26 U.S.C. §§ 3102, 3402, and 7501.

[23]  Internal Revenue Manual 5.19.14.1.6.

[24]  *Slodov v. U. S.*, 436 U.S. 238, 243 (1978).

employees' wages is . . . liable for the taxes which should have been paid."[25]  These individuals are referred to as "responsible persons" and the penalty may be up to 100% of the unpaid taxes.[26]  Liability for the "trust fund" taxes attaches when the individual is the responsible person and willfully fails to collect and pay over the taxes that are due.[27]  Thus, the IRS has an incentive to apply the Debtors' tax payment to the Employer Liability (i.e. non-trust fund taxes) and then seek the Trust Fund Liability from the responsible person – thereby collecting the full amount of the taxes owed.[28]

As set forth above, the Debtors remitted the Withheld Amounts to the IRS.  The IRS applied these remitted funds to the Employer Liability (rather than the Trust Fund Liability as requested by the Debtors).  Furthermore, the IRS alleges that Mr. Peek is a "responsible person."  As a result, the IRS is holding a personal tax refund otherwise owed to Mr. Peek for the tax year 2012 while the IRS investigates whether such refund should be applied to the Trust Fund Liability.  The IRS's imposition of liability to Mr.

---

[25]  *Slodov*, 436 U.S. at 243 (*citing* 26 U.S.C. §§ 3102(b) and 3403).  The Internal Revenue Code states, in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

[26]  *Slodov*, 436 U.S. at 250.  *See also* 26 U.S.C. § 6672.

[27]  *Alsheskie v. United States*, 31 F.3d 837, 838 (9th Cir. 1994) (*citing Purcell v. United States*, 1 F.3d 932, 937 (9th Cir. 1993)).

[28]  *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 550 (1990) (recognizing that from the Government's stand-point it would be more desirable to apply the funds to the non-guaranteed debt prior to the guaranteed debt, as it would create the better chance of discharging the full amount of the tax debt owed).

Peek would, in turn, trigger a claim by him against the Debtors, pursuant to the indemnification provisions in the Plan.

As a result, the Debtors are seeking an order enforcing the Plan injunctions and determining that the Debtors are not responsible for the Employer Liability.[29]   The Debtors argue that the IRS should have filed a proof of claim related to the Employer Liability and, as a result of this failure, is not entitled to recover the Employer Liability. This would result, as a practical matter, in the IRS applying the Withheld Amounts to the Trust Fund Liability, thereby not impacting Mr. Peek or triggering the indemnification provisions in the Plan.  In the alternative, the Debtors argue that *if* the IRS has a claim for the Employer Liability, the Court should designate the tax payment (the "Withheld Amounts") to the Trust Fund Liability thereby satisfying the Trust Fund Liability in full (which would also result in no impact to Mr. Peek personally or the triggering of the indemnification provisions of the Plan).  In this instance, the IRS would be left with an unsatisfied claim against the Debtors.

**B.    It Was Not Necessary For The IRS To File A Proof Of Claim For The Employer Liability.**

The Debtor argues that the IRS should have filed a claim for the Employer Liability and, as the IRS did not, the claim is now barred.  More specifically, the Debtors' reasoning is based on the following: (i) the employee wages were earned pre-petition, (ii) for the purposes of determining when the taxes were incurred, it is the date the taxes accrued rather than the date of assessment, (iii) as such, the Employer Liability was a pre-petition

---

[29] As the movant, the Debtors have the burden of proof.

liability, (iv) claimants, including the IRS, were required to file proofs of claim for prepetition liabilities, (v) the IRS did not file a claim (nor was the liability scheduled), (vi) the IRS is now barred by the Plan injunction from (a) collecting the Employer Taxes or (b) from applying the amounts the Debtors did remit to such Employer Liability.

The IRS has responded that the Form 941 returns were required to be filed with the IRS when the wages were paid and that the taxes did not become due until the Form 941 returns were filed, which was post-petition.  The IRS continues that the tax code requires that taxes be collected by the employer of the taxpayer by deducting the amount of the tax from the wages, as and when paid.[30]  The IRS contends that, since the collection of the taxes occurs when the wages are paid, the tax liability in question arose post-confirmation (even though the wages were earned pre-petition) and, as such, no proof of claim was required.  In addition, the IRS also alleges that these taxes are administrative expense claims.[31]

### i.    The Employer Liability is a Prepetition Claim.

In *U.S. v. Redmond*,[32] the debtor filed for protection under Chapter 11 of the Bankruptcy Code and the court later confirmed the debtor's plan of reorganization.  The debtor was unsuccessful and the case was subsequently converted to a Chapter 7 liquidation.  After conversion of the case, the IRS filed administrative expense claims for unpaid employment and unemployment taxes for which the reorganized debtor became

---

[30]  26 U.S.C. § 3102(a) (*citing* 26 U.S.C. § 3101).

[31]  Hr'g Tr. 13:12-14 (Apr. 1, 2013).  D.I. 1672.

[32]  36 B.R. 932 (D. Kan. 1984).

liable *after* confirmation of its plan but *before* the conversion to a Chapter 7 liquidation.[33] The trustee objected to the alleged priority of the IRS's claim. The *Redmond* court held that "[f]or purposes of determining when the taxes were incurred, it is the date the taxes accrued rather than the date of assessment which controls."[34] The *Redmond* court reasoned that the taxes accrued after the filing of the petition are eligible for promotion to an administrative expense *if* they were incurred as an actual, necessary cost of preserving the estate.[35] The Court continued that, after confirmation, as the bankruptcy estate is no longer being administered by the trustee or the debtor in possession, "taxes which accrue post-confirmation are not incurred as actual, necessary costs and expenses of preserving the estate."[36] As a result, the *Redmond* court determined that the IRS's claim for unpaid employment and unemployment taxes should be treated as a prepetition claim.[37]

---

[33] *Id.* at 933.

[34] *Id.* at 934 (*citing In re Scrap Disposal, Inc.*, 24 B.R. 178, 180 (Bankr. S.D. Cal. 1982) *aff'd*, 38 B.R. 765 (B.A.P. 9th Cir. 1984)).

[35] *Redmond*, 36 B.R. at 934.

[36] *Id.* However, in *U.S. v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 121 S. Ct. 1433, 149 L. Ed. 2d 401 (2001), the Supreme Court was presented with the following issue: whether back wages should be taxed by reference to the year they were actually paid or, instead, by reference to the years they should have been paid. As a practical effect, if the back wages were taxed in the year they "should have been paid" the employer and its employee would generate no additional Federal Insurance Contributions Act (FICA) and Federal Unemployment Tax Act (FUTA) tax liability; in contrast, if the back wages were taxed in the year they "were actually paid" the employer and its employees would incur significant tax liability. *Id.* at 206. The Supreme Court held that the back wages are subject to FICA and FUTA taxes according to the year in which the wages are *in fact paid*, rather than in the year or years when they should have been paid. *Id.* at 220.

[37] *Redmond*, 36 B.R. at 934 (*citing* 11 U.S.C. § 348(d) ("A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.")).

In the case of *In re Hillborough Holdings Corp.*,[38] the bankruptcy court considered whether the taxes generated from pre-petition income could be claimed as an administrative expense of the estate as the associated tax return was filed post-petition. The *Hillsborough Holdings* court held:

> a majority of courts have held that the date the taxes are accrued, rather than the date of assessment, is the date which controls. The mere fact that assessment of a tax does not occur until after the Bankruptcy petition is filed does not result in a tax relating to pre-petition activities being allowed as an administrative expense. To the extent that income was not earned by the estate during part of the tax year, but instead earned by the pre-petition debtor, the tax was not incurred by the estate and was not entitled to administrative expense.

> The claim sought by the IRS to be allowed as an administrative expense relates to income received [before] . . . the date the Chapter 11 case was filed by these Debtors, this income is clearly attributable to pre-petition activities. To charge the estate with these taxes as cost administration is a proposition which this Court is unwilling to accept. Therefore, this Court is satisfied that the taxes incurred pre-petition by the Debtor are not properly allowable as costs of administration pursuant to § 503.[39]

---

[38] 156 B.R. 318, 320 (Bankr. M.D. Fla. 1993) *subsequently aff'd*, 116 F.3d 1391 (11th Cir. 1997) (citations omitted).

[39] *Id.* at 320 (citations omitted). S*ee Matter of O.P.M. Leasing Servs., Inc.*, 68 B.R. 979, 983 (Bankr. S.D.N.Y. 1987). *See also Matter of Dayhuff*, 185 B.R. 971 (Bankr. N.D. Ga. 1995). The *Dayhuff* court distinguished income taxes from property taxes:

> Liability for income taxes accrues contemporaneously with the generation of the income. As such, the debtor may *incur* the tax expense pre-petition, even when no assessment ultimately takes place until after filing.

> By contrast, liability for property or ad valorem taxes is triggered by ownership of the taxed property on the date of assessment. That is, notwithstanding any other fact, whoever happens to own the property in question on the date of assessment will bear the burden of that property or ad valorem tax. Thus, these taxes may be said to actually accrue on the date of assessment. When one applies the accrual theory in the context of property or ad valorem taxes, they, therefore, will find a different

Based on the above, the Court finds that the Employer Liability is a pre-petition claim (rather than an administrative claim as asserted by the IRS).[40]  The wages which give rise to the purported tax claim were earned pre-petition – the wages and associated taxes were not actual and necessary to the preservation of the bankruptcy estates.[41]  *Even if* the IRS could somehow claim that the purported tax claim arose post-petition, such claim would also be post-confirmation, and again would offer no benefit to the bankruptcy estate.[42]

## ii.   The IRS Did Not Need to File a Proof of Claim for the Employer Liability.

As the Employer Liability is a pre-petition one, the next question is whether the IRS ought to have filed a claim.  The IRS argues that "the liability for the tax withheld . . . attached to the [responsible person] at the time they withheld the tax."[43]  "[L]iability as a responsible person attaches each time salaries are paid during the course of a quarter. 'As the employer withholds taxes from the employees, a contingent liability is created. The liability merely becomes fixed on the date when the payments are due.'"[44]  However,

---

standard of timing in play, one focusing exclusively upon the date of assessment.

*Id.* at 974 n. 1 (emphasis provided; citations omitted).

[40] *Redmond*, 36 B.R. at 934 (*citing In re Scrap Disposal, Inc.*, 24 B.R. 178, 180 (Bankr. S.D. Cal. 1982) *aff'd*, 38 B.R. 765 (B.A.P. 9th Cir. 1984) (holding "[f]or purposes of determining when the taxes were incurred, it is the date the taxes accrued rather than the date of assessment which controls.")).

[41] *Hillsborough Holdings Corp.*, 156 B.R. at 320; *Redmond*, 36 B.R. at 933.

[42] *Redmond*, 36 B.R. at 933.

[43] *Teel v. United States*, 529 F.2d 903, 906 (9th Cir. 1976) (citation omitted).  *See also Jones v. United States*, 60 F.3d 584, 588 (9th Cir. 1995) (citations omitted).

[44] *Davis v. United States*, 961 F.2d 867, 873 (9th Cir. 1992) (*citing Teel*, 529 F.2d at 906).  S*ee also  Jones v. United States*, 60 F.3d 584, 588 (9th Cir. 1995) (citations omitted)

at issue here is not whether Mr. Peek is the "responsible person" (which would be beyond what is in front of the Court) but whether the IRS is asserting a pre-petition claim that is now barred by the Bar Date and the Plan Injunction against the Debtors.

In that regard, in *Otte v. United States*,[45] the Supreme Court considered "the priority to be accorded to withholding taxes on prebankruptcy wage claims" under the Bankruptcy Act.[46]  In *Otte*, a corporation filed a petition for an arrangement under Chapter XI of the Act, but the arrangement failed and the corporation was adjudicated as bankrupt.  A trustee was appointed to administer the bankruptcy estate.  During the period for filing proofs of claim against the estate, former employees filed proofs for unpaid wages that had been earned before the filing of the Chapter XI petition.[47]  No proofs of claim were filed for any federal income or FICA taxes on these wage claims.  The referee in bankruptcy entered an order directing distribution to the wage claimants without deductions for any withholding taxes.  The case was eventually appealed to the Second Circuit, which held that the trustee was obligated to pay the withholding taxes and that the taxing entities were not required to file proofs of claim.  The Second Circuit also held that the tax claimants had priority claims under the Act.

On further appeal, the Supreme Court affirmed concluding that a trustee in bankruptcy is an "employer" under the terms of the Internal Revenue Code when he makes wage payments to former employees of the bankrupt, and as an employer, the

---

[45] 419 U.S. 43 (1974).

[46] *Id.* at 47.

[47] *Id.* at 45.

trustee is obligated to pay withholding taxes.  The Supreme Court also held that the

taxing entities were *not* required to file proofs of claim because their tax claims were

directly against the bankruptcy estate and not against the bankrupt corporation.[48]  Noting

that "[l]iability for the taxes accrues only when the wage is paid," the Supreme Court

reasoned as follows:

> The wages that are the subject of the wage claims, although
> earned before bankruptcy, were not paid prior to bankruptcy.
> [The corporation] had incurred no liability for the taxes.
> Liability came into being only during the bankruptcy.  The
> taxes do not partake, therefore, of the nature of debts of the
> bankrupt for which proofs of claim must be filed.[49]

Although also under the Bankruptcy Act, the Tenth Circuit Court of Appeals

subsequently held that *Otte* would have reached the same result for general unsecured

wages claims.[50]

As a result of the reasoning in *Otte* (although, admittedly, *Otte* was filed under the

Act rather than the Bankruptcy Code), and as a matter of policy, it is not practical for the

IRS to be required to file a claim for the Employer Liability without knowing if, how

much, and when pre-petition wages will be paid.  The Court finds that the payment of

the pre-petition wages (and the subsequent filing of the 941 tax returns) triggers the IRS's

---

[48] *Id.* at 55.

[49] *Id.*

[50] *Matter of Armadillo Corp.*, 561 F.2d 1382, 1387 (10th Cir. 1977) ("To be sure, *Otte* was not concerned with general unsecured wage claims.  Even so, the opinion, particularly the above-quoted portion, does, we believe, lend credence to the proposition that the Court would have reached the same result for general unsecured wage claims.  We are so persuaded because the pivotal factor is limited to the proper nature of wage claim taxes as bankruptcy debts and not in relation to the genesis of the wage claims giving rise to the taxes and debts.  Under these circumstances, we do not believe that *Otte* may be logically extended so as to include a holding that the filing of proofs of claims is necessary for all the taxes here in issue.").

right to payment.  As such, the IRS was not obligated to make a claim in these cases until the Debtors' paid the wages.  Thus, the IRS' claim for Employer Liability taxes is not time barred by the Bar Date or the Plan injunction.

### iii.    Conclusion

The Court find that (i) the Employer Liability is not an administrative claim, but would have the priority set forth in § 507, if at all; and (ii) the IRS did not need to file a proof of claim for the Employer Liability resulting from pre-petition wage claims that were not paid until after the effective date of the Plan (and pursuant to the terms of the Plan).

### C.    The Court Cannot Direct the Designation of the Withheld Amounts Without Additional Evidence.

As the Court finds that the IRS's claims are not barred by the Bar Date nor the Plan injunction, the Debtors also seek to have the Court re-designate the taxes paid by the Debtors to the Trust Fund Liability portion of the taxes owed (rather than allowing the IRS to apply such funds first to the Employer Liability).

As set forth above, the Debtors have a confirmed liquidating Chapter 11 plan and paid the taxes to the IRS though the EFTPS and "subsequently requested" that the IRS apply the remittances to the Trust Fund Liability.  The IRS argues that designation of tax liability is limited to where the court concludes that allocation of the tax payment is necessary for the reorganization's success.[51]  First, the IRS argues that as the case *sub judice*

---

[51]  The IRS also seeks to distinguish *Thorne* arguing that in *Thorne* the IRS stipulated that the tax payment was *voluntary* which allowed for the IRS designation policy to apply.  The voluntary versus involuntary distinction is summarized as follows:

is a liquidating Chapter 11 case, it would be impossible to show application of the deposits to the trust fund portions of the liabilities is "necessary to the reorganization's success." Second, the IRS continues that EFTPS, the electronic payment system for paying taxes, does not allow designation of the payment.  Lastly, the IRS argues that the Withheld Amounts are a "deposit" rather than a "payment" because the Withheld Amount are remitted with the 941 tax forms and once withheld from an employee's wages there is no longer an assessment due against the employee.

In response, the Debtors argue that designation of the Withheld Amounts to the Trust Fund Liability is essential to the chapter 11 process even in a liquidation scenario. As the IRS did not file a proof of claim for the Employer Liability and the Debtors deposited the Withheld Amounts on account of the Trust Fund Liability, the Debtors did not reserve for the Employer Liability nor the Trust Fund Liability.  The Debtors argue that designation of the Withheld Amounts to the Trust Fund Liability is necessary to maintain the integrity of the chapter 11 process, including reliance on the bar date and

--------------------------

> IRS policy has long permitted a taxpayer who 'voluntarily ' submits a payment to the IRS to designate the tax liability  to which the payment will apply.  This policy reflects the generally recognized common law rule between debtors and creditors that the debtor may indicate which debt it intends to pay when it voluntarily submits a payment to a creditor, but may not dictate the application of funds that the creditor involuntarily collects from it.

*IRS v. Kaplan (In re Kaplan)*, 104 F.3d 589, 599 (3d Cir. 1997) (*citing Energy Resources*, 871 F.2d at 227; *Pepperman*, 976 F.2d at 127; other citations and internal quotation marks omitted)).  In the case *sub judice*, the IRS has made no such stipulation.  However, the Supreme Court, as discussed above, held in *Energy Resources* that the designation between "voluntary" and "involuntary" was irrelevant.  *United States v. Energy Res. Co., Inc.*, 495 U.S. at 548-49 (holding that "for whether or not the payments at issue are rightfully considered to be involuntary, a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan.").

implementation of the Plan.  Second, the Debtors argue that as a result of the EFTPS systems, Courts should designate tax liability as the electronic system does not allow contemporaneous designations of payments.  Lastly, the Debtors argue that the equitable relief requested is justifiable whether the Withheld Amounts constitute a "payment" or a "deposit."  The Debtors urge that it would be absurd to subject the Debtors to a deposit penalty to convert the "deposit" to a "payment" before they are entitled to equitable relief from the Court designating the payment of Withheld Amounts to the Trust Fund Liability.

In *U.S. v. Energy Resources*,[52] the Supreme Court has evaluated whether a Chapter 11 reorganizing debtor can designate a tax payment to its trust fund liability.  Prior to reaching the Supreme Court in that case, the First Circuit held that, although tax payments made pursuant to a plan of reorganization were "involuntary," that the bankruptcy court possesses the legal power to order the IRS to apply tax payments first to trust fund liabilities.[53]  The First Circuit reasoned as follows: (i) "Congress has granted bankruptcy courts broad equitable powers, including those powers expressly or by necessary implication conferred by Congress."[54]  (ii) "[B]ankruptcy courts have long had the legal power to tell creditors against which of a debtor's several debts they are to apply a particular payment."[55]  (iii) "[N]othing in the bankruptcy statute limits, in any relevant

---

[52] *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990).

[53] *United States v. Energy Resources,* 871 F.2d 223, 230 (1ˢᵗ Cir. 1989*)*.

[54] *Id.* (internal quotations and citations omitted).

[55] *Id.* at 231 (citations omitted).

way, the bankruptcy court's power to allocate when the creditor is the IRS."[56] (iv) "[I]t makes administrative sense for the bankruptcy court to have the power to determine, in some cases, the debt allocation of Chapter 11 tax payments."[57] (v) "[T]he IRS' policy of allocating payments first to a corporate debtor's non-trust fund tax liability is not a statutory policy."[58] (vi) The First Circuit could "find no policy embodied in any specific statute, tax or otherwise, that either directly, or by manifesting a congressional intent, circumscribes a bankruptcy court's general powers in the respect at issue here."[59]

On appeal, the United States Supreme Court affirmed the First Circuit, in part, and held that regardless of whether tax payments through a plan were voluntary or involuntary, a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities *if* the bankruptcy court determines that this designation is necessary to the success of a reorganization plan.[60]  The Supreme Court specifically noted that such designation was regardless of whether the tax payments were considered "voluntary or involuntary."[61]

In *Babcock vs. U.S.*,[62] the IRS sought trust fund liability from responsible person taxpayers.  The company had paid the taxes via EFTPS which the IRS then allocated.  The

---

[56]  *Id.* at 231 (citations omitted).

[57]  *Id.* at 231 (citations omitted).

[58]  *Id.* at 232.

[59]  *Id.* at 232.

[60]  *Energy Res. Co., Inc.*, 495 U.S. at 548-49.

[61]  *Id.*

[62]  807 F.Supp.2d 904 (C.D. Cal. 2009).

taxpayers argued that the IRS's allocation of the company's deposits was unfair because EFTPS did not provide a means for the taxpayer's allocation between trust fund and non-trust fund taxes.[63]  The taxpayers argued that the required use of EFTPS deprived them of their opportunity to designate employment tax deposits between trust and non-trust fund taxes.[64]  The court held that regulations relating to the EFTPS should be afforded deference by the Court.[65]  The court then discussed 26 U.S.C. § 6656 which is a limited statutory right to designate tax deposits following the failure to deposit taxes.  After the court determined that § 6656 did not apply to the case at hand (which is not at issue in the case *sub judice*), it stated:

> Section 6656 is nonetheless instructive because it provides one of the only means by which taxpayers are afforded a right to designate tax deposits.  Yet, § 6656 provides a limited right to designate deposits and it does not expressly provide for the designation between trust fund and non-trust fund taxes, thereby indicating that Congress necessarily intended a very limited right of designation.   Accordingly, not only is designation under § 6656 inapplicable in the instant action, it is illustrative that Congress did not intend to provide the right of designation to persons like the Taxpayers.[66]

The *Babcock* court continued that designation of the companies' tax deposits to trust fund taxes would undermine the purposes of § 6672.[67]  The court continued that it was not

---

[63]  *Id.* at 910.

[64]  *Id.*

[65]  *Id.* at 912.

[66]  *Id.* at 912-13.

[67]  *Id.* at 913 ("Accordingly, because the purpose of § 6672 is to hold responsible persons liable and make the federal Government whole, this Court is unwilling to provide the Taxpayers with a right to designate certain taxes because that would impermissibly shift losses to the Government and implicitly disregard § 6672.").  *See supra* n. 25 for text of 26 U.S.C. § 6672.

within the court's "purview to modify lawful EFTPS regulations" to reallocate the IRS's original allocation of the tax payments.[68]   At first blush, Babcock appears inapposite to *Energy Resources*.   However, the *Babcock* court distinguished its ruling from *Energy Resources* stating that *Energy Resources* did not address rights of an employer to designate payroll tax deposits, rather *Energy Resources* dealt with a chapter 11 reorganization plan.[69]

Thereafter, in *In re Thorne*,[70] the IRS filed claims against individual debtors on the basis that the individuals were liable for the unremitted trust fund taxes of a company they jointly owned National Mortgage Access, Inc. ("National Mortgage").   National Mortgage underpaid its employment taxes in the fourth quarter of 2006.   In November, 2006, National Mortgage paid the IRS a lump payment through the EFTPS.   However, National Mortgage filed its related 941 tax return more than two years after any taxes were due.   The IRS stipulated that this November payment was a voluntary tax payment. Subsequently, the IRS applied a portion of the November payment to trust fund taxes owed and the remainder to the non-trust fund taxes.   The IRS then sought the deficiency in the trust fund taxes via a claim against the individual debtors.   Once the bankruptcy court found that the debtors were "responsible persons," the court had to decide the amount of the IRS's claim.   The debtors contended that the IRS's application of the November payment to the non-trust fund portion of the taxes owing was improper

---

[68] *Id.* at 914 (relying on *Davis v. United States*, 961 F.2d 867, 878 (9th Cir. 1992)).

[69] *Id.* at 914-15 n. 8.

[70] *In re Thorne*, (No. 09-04515-8-SWH), 107 A.F.T.R.2d 2011-1551; 2011 WL 1118487 (Bkrtcy. E.D.N.C. Mar. 24, 2011).

because the debtors could not designate the payments to the trust fund portion of the liability. The court noted that: "[t]he IRS has a long standing policy, referring back to the common law practice that a debtor can designate how his payments are applied, which allows voluntary payments to be designated."[71] The bankruptcy court ruled:

> Based on this testimony, the court concludes that debtors had no reasonable method to ensure that their payments were to be applied to their trust fund liability short of tendering monies in full payment of their employment tax liability. Because the debtors had no means of making a designation as to how their payment of $71,046.40 would be applied, as they have a right to do, it would be inequitable to allow the IRS to make that decision for the debtors.[72]

The *Thorne* court then designated the entire November payment to the trust fund liability.[73]

In *United States v. Pepperman*,[74] a Chapter 7 case, the Third Circuit has held that *Energy Resources* "consistently linked its holding with the fact of reorganization and the debtor's need for rehabilitation."[75] The Third Circuit continued that rehabilitation "considerations have no application where Chapter 7 liquidation is involved because designation of tax payments cannot aid the debtor's reorganization efforts."[76] The Third

---

[71] *In re Thorne*, 107 A.F.T.R.2d 2011-1551, 2011 WL 1118487.

[72] *Id.*

[73] *Id.*

[74] 976 F.2d 123 (3d Cir. 1992).

[75] *Id.* at 130 (references omitted).

[76] *Id. But see In re Klaska*, 152 B.R. 248 (Bankr. C.D. Ill. 1993) (The bankruptcy court extended the holding in *Energy Resources* to a Chapter 13 case).

Circuit held that when the court is assessing whether reallocation of tax payments is

necessary to the successful reorganization of the debtor:

> upon consideration of the reorganization plan as a whole, in
> so far as the particular structure or allocation of payments
> increases the risk that the IRS may not collect the total tax
> debt, is that risk nonetheless justified by an offsetting
> increased likelihood of rehabilitation, i.e., increased
> likelihood of payment to creditors who might otherwise lose
> their money?[77]

Courts have been split regarding whether the holding in *Energy Resources* should

be extended to Chapter 11 liquidating plans.[78]  In the case of *In re Deer Park*,[79] a liquidating

Chapter 11 plan was approved whereby the debtor-in-possession's assets were sold, and

funds were generated for payment of priority creditors and secured creditors, specifically

including tax claims owed to the IRS.  The principal of the debtor continued to act on

---

[77] *In re Kaplan*, 104 F.3d 589, 598 (3d Cir. 1997).

[78] *In re Deer Park, Inc.*, 136 B.R. 815, 818 (B.A.P. 9th Cir. 1992) *aff'd*, 10 F.3d 1478 (9th Cir. 1993).  *See In re Poydras Manor, Inc.*, 242 B.R. 603, 608 (Bankr. E.D. La. 2000) ("The court holds that the *Energy Resources* case can be extended to Chapter 11 liquidating plans of reorganization in appropriate cases. Under the facts of this case, the allocation of tax payments to trust fund taxes as provided for in the debtor's plan is proper because the continued participation by the Sokacs is necessary to bring about the maximum recovery to all the creditors from the planned liquidation of the business."); *In re 20th Century Enterprises, Inc.*, 1:94CV219-D-D, 1995 WL 1945478, *3 (N.D. Miss. July 20, 1995) ("Judge Houston has presided over the bankruptcy proceedings below and made a factually specific determination that allocation of tax payments to trust fund obligations is necessary for a successful Chapter 11 liquidation. The undersigned is of the opinion that, as a court of equity, the bankruptcy court is armed with the authority to reach conclusions and issue orders which are necessary to a successful Chapter 11 proceeding, be it reorganization or liquidation.); *In re 20th Century Enterprises, Inc.*, 90-23698, 1994 WL 779356 (Bankr. N.D. Miss. Jan. 18, 1994) *aff'd*, 1:94CV219-D-D, 1995 WL 1945478 (N.D. Miss. July 20, 1994); *In re Flo-Lizer, Inc.*, 164 B.R. 79, 81 (Bankr. S.D. Ohio 1993) *aff'd*, 164 B.R. 749 (S.D. Ohio 1994).  **But see** *Locks v. U.S. Tr.*, 157 B.R. 89, 96 (W.D. Pa. 1993); *In re Kare Kemical, Inc.*, 935 F.2d 243, 244 (11th Cir. 1991) (*Energy Resources* applicable to Chapter 11 reorganizations only); *In re Jehan-Das, Inc.* 925 F.2d 237, 238 (8th Cir. 1991); *cert. denied*, 502 U.S. 810 (1991) (Chapter 11 liquidation tax payments cannot be allocated first to trust funds taxes); *In re Equipment Fabricators, Inc.*, 127 B.R. 854, 858 (D. Ariz. 1991) (*Energy Resources* is not applicable to a Chapter 11 liquidation); *In re Visiting Nurse Ass'n*, 128 B.R. 835, 837 (Bankr. M.D. Fla. 1991) (*Energy Resources* is not applicable to a Chapter 11 liquidation because allocation of the tax payments is never necessary to effectuate the liquidation plan).

[79] 136 B.R. 815 (B.A.P. 9th Cir. 1992) *aff'd*, 10 F.3d 1478 (9th Cir. 1993).

behalf of the debtor both before and after plan confirmation, and received no compensation in an effort to be relieved of potential personal tax liability.[80]  After the debtor made what it believed to be the full amount of the tax payment, the IRS detected a clerical error in the tax claim and asserted a claim for the uncollected amount against the debtor's principal for unpaid trust fund taxes.[81]  Thereafter, the creditors committee filed a motion to modify the order for payment of priority claims to include a direction that the past tax payments be applied first to the trust fund portion of the taxes.[82]  The bankruptcy court granted the order requiring the IRS to first apply tax payments to the trust fund liabilities.[83]  On Appeal, the Bankruptcy Appellate Panel affirmed, holding:

> [t]he government argues that the Supreme Court holding in *Energy Resources* is inapplicable because Deer Park's Chapter 11 plan is a "liquidating" plan and not a "reorganization."  We disagree.  Such a broad statement fails to recognize that a debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized from a forced sale.  The Bankruptcy Code recognizes this in § 1129(a)(11), by providing that liquidation may be contemplated in a valid Chapter 11 plan of reorganization, despite the label "reorganization."  Although the word "reorganization" might commonly bring to mind ongoing operations, Congress explicitly placed language providing for liquidation within Chapter 11, which is titled "Reorganization."  Had Congress not intended to include liquidation as an acceptable type of reorganization plan, then presumably all provisions dealing with liquidation would fall within Chapter 11, which is specifically titled "Liquidation."

---

[80] *Deer Park*, 164 B.R. at 816.

[81] *Id.*

[82] *Id.*

[83] *Id.*

> We must therefore assume Congress placed this provision in Chapter 11 intentionally.
>
> Liquidation under a Chapter 11 plan is not the same as a Chapter 7 liquidation. A liquidation under Chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a Chapter 7 trustee, who is generally less familiar with the debtor's assets. A Chapter 11 plan, even though a liquidating plan, must still conform to the same statutory requirements of any other Chapter 11 reorganization. A liquidating plan is desirable when the debtor in possession can bring about a greater recovery for the creditors than would a straight liquidation under Chapter 7.[84]

The *Deer Park* court held that the reallocation of tax payments and its impact on the debtor's rehabilitation must be conducted on a case-by-case basis, and "not merely by whether liquidation is contemplated."[85] The *Deer Park* court then found that the responsible person's participation was necessary to the success of the plan and designated the payments to the trust fund liability.[86] The Ninth Circuit affirmed the

---

[84] *Deer Park, Inc.*, 136 B.R. at 818.

[85] *Id.* at 819.

[86] *Id.* The *Deer Park* court found:

> For example, Stoll's initial participation was based on his belief that his potential tax liability would be entirely satisfied by the plan payments to the IRS. This was his only compensation. Further, to secure Stoll's continuing participation and in recognition of Stoll's past efforts, the creditors' committee obtained an order directing the IRS to apply tax payments to the trust fund portion of the tax liability to ensure that Stoll would be relieved of any personal liability. Had the committee not believed that Stoll's continuing involvement was necessary to Deer Park's plan, they certainly would not have obtained the order. The creditors' committee motion states that Stoll provided services and assisted in obtaining the proceeds used to pay the administrative expenses and is continuing to provide services to the estate by his communications and negotiations with Alpine Meadows. Nothing in the record suggests otherwise.

Bankruptcy Appellate Panel's holding.[87]   However, the Eleventh and Eighth Circuit Courts of Appeal have declined to apply the holding in *Energy Resources* in a Chapter 11 liquidating case.[88]

As set forth above, there is a split in authority regarding whether *Energy Resources* would apply in a liquidating Chapter 11 case.  Although, the Court believes the reasoning in *Deer Park* to be persuasive,[89] regardless of whether this Court believes that *Energy Resources* would apply in a Chapter 11 liquidation, the Court cannot reach this issue because *even if Energy Resources* applies in a Chapter 11 liquidation, the Debtors (which have the burden of proof) have not made a factual record regarding whether Mr. Peek's participation was necessary to the success of Debtors' Plan or that the tax designation is necessary to the success of the Plan.  As a result, the Court denies, without prejudice, the Debtors' request for the Court to designate the tax payment to the Trust Fund Liability.

---

*Deer Park, Inc.*, 136 B.R. at 819.

[87]   *In re Deer Park, Inc.*, 10 F.3d 1478, 1480 (9th Cir. 1993) ("It does not matter that the Chapter 11 reorganization plan is a liquidating plan, so long as the allocation of trust fund tax payments is necessary to the success of the reorganization.").

[88]   *In re Kare Kemical, Inc.*, 935 F.2d 243, 244 (11th Cir. 1991) (*Energy Resources* applicable to Chapter 11 reorganizations only); *In re Jehan-Das, Inc.* 925 F.2d at 238 (Chapter 11 liquidation tax payments cannot be allocated first to trust funds taxes).

[89]   The *Locks* Court interpreted the Third Circuit's decision in *Pepperman* to apply to both Chapter 7 liquidations and Chapter 11 liquidations.  *Locks v. U.S. Tr.*, 157 B.R. 89, 96 (W.D. Pa. 1993) ("As Chief Judge Sloviter observed in *Pepperman*, the vast majority of courts that have considered the scope of the *Energy Resources* decision have found it inapplicable to liquidations under Chapter 7 or Chapter 11, and limited the decision to Chapter 11 reorganizations.").  However, the ruling in *Pepperman* does not mention Chapter 11 liquidations, nor was the issue before the Court.  At most, the reasoning in *Pepperman* indicates how the Third Circuit *would* rule when presented with the application of *Energy Resources* in a Chapter 11 liquidation.

**CONCLUSION**

As set forth above, the Court finds that (i) the Employer Liability is a prepetition claim and not an administrative claim; (ii) the IRS's claim for the Employer Liability is not barred by the Bar Date; and (iii) that the Debtors have not set forth sufficient evidence to determine whether designation of the Withheld Amounts to the Trust Fund Liability is necessary to the success of the Plan. As such, the Court will deny the Motion with prejudice as to (i) and (ii) above and without prejudice as to (iii). An order will be issued.